SCHMIDT (Elizabeth), Plaintiff, v. SCHMIDT (Floyd), Defendant and Appellant: SCHMIDT (Carlos), Defendant and Respondent.

*October 28—November 26, 1963.*

434

For the appellant there was a brief by *Zwickey & Zwickey* of Clintonville, and oral argument by *A. Don Zwickey*.

For the respondent there was a brief and oral argument by *Richard E. Johnson* of Waupaca.

GORDON, J.   We are asked on this appeal to find that there was a "clear and satisfactory preponderance of the evidence" upon which the trial court should have found that Floyd Schmidt was not the father of the child, Carlos.

The evidence which tends to support the judgment of the trial court consists of the following factors:

1. Elizabeth and Floyd Schmidt were husband and wife at the time of the child's birth, and therefore the child is presumed to be legitimate.  Sec. 328.39 (1) (a), Stats.

2. Mr. and Mrs. Schmidt were living in the same house at the time of the child's conception and birth.

3. Both the birth certificate and the baptismal certificate for this child designated the husband, Mr. Schmidt, as the father.

4. After the child's birth, Mr. Schmidt took the child into his home and supported it.  At no time prior to the divorce proceedings did he openly disavow paternity.

5. Mrs. Schmidt's divorce complaint included a statement that there were three children born "to the said parties as a result of said marriage."

The evidence contradicting the trial court's judgment consists of two very significant factors:

1. Mrs. Schmidt and her husband each testified as to a date of last sexual intercourse with one another.  Either date referred to by the spouses would unquestionably preclude paternity on the part of Floyd Schmidt.

2. Mrs. Schmidt testified that she had intercourse with a Mr. Greely in September, 1959; she became pregnant with the child, Carlos, who was born on June 21, 1960.  A paternity suit was processed by the district attorney and approved by the circuit court wherein the said Mr. Greely agreed to pay $300 toward the lying-in expenses for the child in question.

We have searched this record and have been unable to find a satisfactory answer to this question: What possible motivation might have prompted both the husband and wife to have testified unequivocally that the child in question was not a product of the marriage? There was obviously no collusion between the husband and wife; they were adversaries in the contested divorce litigation.

The husband might well deny having had seasonable intercourse with his spouse in order to avoid the economic burden of future care for the child; however, Mrs. Schmidt has given evidence to the same effect, and we find no plausible reason therefor, save truth. We have carefully read her testimony, and it leaves us without any uncertainty as to her position: Her husband could not possibly have fathered this child.

Mrs. Schmidt was surely not motivated by any thought that her child would prosper by being the progeny of Mr. Greely instead of Mr. Schmidt; Mr. Greely paid only the pittance of $300 in settlement of the action brought against him—and even that under a denial of paternity. Mr. Greely is patently not the sugar daddy whose gold has blinded the vision of Mrs. Schmidt as she looks toward her child's future. She could scarcely have helped illegitimize her child so that he might enjoy the munificence of the putative father, Mr. Greely.

Our inability to explain away the testimony of both Mr. and Mrs. Schmidt as to the dates of their last sexual relationship does not necessarily warrant a finding that the presumption of legitimacy has been overcome. However, when we examine the other evidentiary factors outlined earlier in this opinion, we find that they are not impressive.

The trial judge expressed doubt that a married man and his wife, being under no physical disability and living in the

same household, would abstain from sexual intercourse for protracted periods of time. The trial judge stated:

"I can't sit here and believe that two normal people who have been living together under the same roof without having normal relationships with each other; . . ."

We believe that there is no support in this record for the conclusion that Mr. and Mrs. Schmidt had sexual relationships simply because they were husband and wife and were living under the same roof. While there was access on the part of Floyd Schmidt, this factor is not controlling. See *Zschock v. Industrial Comm.* (1960), 11 Wis. (2d) 231, 234, 105 N. W. (2d) 374.

When, as here, the spouses have been embittered for several years and have been in a state of emotional tension, it is not unlikely that they would desist completely from sexual intimacies with one another. This was their testimony and, in our opinion, it is not incredible. Here are some examples of Mrs. Schmidt's testimony, which would suggest the extent of her disaffection for Mr. Schmidt and would tend to negate the likelihood of any amorous attitudes:

"So, anyway at this moment he was so angry he pulled me back by the hair and knocked me down and then he pulled me by the collar of my coat and dragged me along and I begged him to let me up so I could walk and he wouldn't do it. He pulled me into the living room."

". . . he was in a very angry mood and he started to quarrel with me and he knocked me down on to the davenport and he kept hitting me across the head and kept banging my head into the wall until I lost consciousness."

". . . then he pushed me against the refrigerator and left a black and blue mark on my arm and struck me across the head."

"I lost weight and I couldn't sleep or eat. I became very nervous."

Mrs. Schmidt explained that Floyd Schmidt was named as the father on the birth certificate and the baptismal certifi-, cate as a matter of convenience. Indeed, sec. 69.29, Stats., provides as follows:

"Whenever a child is born to a woman while she is the lawful wife of a specified man, the certificate of birth for such child shall list the name of the husband as the father of such child unless and until the paternity of such child is proven by clear and satisfactory preponderance of the evidence and in any proceeding under ss. 52.21 to 52.45 such birth record shall not be admissible in evidence."

In our opinion, the designation of Floyd Schmidt as the father of the child on the birth certificate and the baptismal certificate is of very minor significance in establishing paternity. A person in Mrs. Schmidt's position would understandably be reluctant to go into a lengthy explanation of the circumstances surrounding the conception of her child when asked to complete these forms. She testified that the medical doctor who delivered her was aware of the facts concerning the child's paternity.

Mr. Schmidt provided support for the child, Carlos, and also failed to deny paternity until the divorce action. These were acts which do not preclude his subsequent disavowal of paternity. When the third child was born to his wife, Mr. Schmidt did not have any satisfactory alternative so long as he continued to live with Mrs. Schmidt. He did not seek this divorce. It was not until his wife started divorce proceedings that there was a specific occasion for him to speak up on the subject of paternity. His silence up to that point should not be construed as acquiescence under the circumstances.

The guardian *ad litem* for the child, Carlos, takes the position that the presumption of legitimacy has not been overcome. Prior to 1960, sec. 328.39 (1) (a), Stats., required

proof "beyond a reasonable doubt" to upset the presumption of legitimacy. This was amended by ch. 595, sec. 75, Laws of 1959, effective January 1, 1960. The legislative council note relative to the amendment is pertinent:

"The proposed law reduces this burden to a 'clear and satisfactory preponderance of the evidence,' a higher degree of proof than is required in most civil actions but not as great as the burden of proof reserved for criminal actions. The change is consistent with the burden required in paternity actions. (Sec. 52.355 Stats.)" 38 W. S. A., 1963 Supp., p. 23.

It is thus clear that the legislature has provided under both sec. 328.39 and sec. 52.355, Stats., that one who would illegitimize the offspring of a married woman must prove such position by a "clear and satisfactory preponderance of the evidence." We believe that the trial judge gave an improper construction to the quantum of proof which was required under this rule; such conclusion seems to follow from this extract from the record:

Mr. Zwickey: "Let me ask you this, your honor. If this doesn't establish that this man is not the father how are you ever going to do it?
The Court: "About the only time we have had that established in this court, and counsel should realize that there are two or three cases where people were not living together as husband and wife and where the defendant was as a matter of fact in the armed forces beyond the seas. Now, I know of two or three cases where the facts were in that respect true so there couldn't have been any relations between the parties but her. You are asking the court to take the testimony of two people who live together as husband and wife under the same roof."

The above statement by the trial judge is inconsonant with the statutory changes and the more-recent cases dealing with the quantum and nature of the proof required to overcome

the presumption of legitimacy. *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 112 N. W. (2d) 701; *Zschock v. Industrial Comm.* (1960), 11 Wis. (2d) 231, 105 N. W. (2d) 374; *In re Aronson* (1953), 263 Wis. 604, 58 N. W. (2d) 553; *Vorvilas v. Vorvilas* (1948), 252 Wis. 333, 31 N. W. (2d) 586.

The guardian *ad litem* also urges that since there was a discrepancy in the testimony of Mr. and Mrs. Schmidt as to the date of their last instance of sexual intercourse, the trial court was entitled to disregard both of their versions. We recognize that under some circumstances a discrepancy of this nature could cast a doubt on the truthfulness of one or both witnesses; on the other hand, it also suggests that Mr. and Mrs. Schmidt did not conspire to illegitimize the child, since it would have been easy, if they had such motivation, to have agreed upon a fixed date.

The statement contained in the complaint that three children were born as a result of the marriage does not carry with it the connotation that Mrs. Schmidt was thereby acknowledging that all three of her children were in fact fathered by Mr. Schmidt. We find plausible her explanation that she understood this to mean that three children were born to her during the time of her marriage to Mr. Schmidt.

On balance, it would seem that the appellant has met the burden of overcoming the presumption of legitimacy. The testimony of Mr. and Mrs. Schmidt is clear and unequivocal. The evidence offered to counter their testimony is collateral and subject to numerous infirmities. The legislature having seen fit to lower the degree of proof required to overcome the presumption of legitimacy, and this court being persuaded that the finding of the trial judge is against the great weight and clear preponderance of the evidence, we conclude that the portion of the judgment appealed from must be reversed. Upon the remand the county court should

enter a judgment determining that Floyd Schmidt is not the father of the child, Carlos.

*By the Court.*—The portion of the judgment appealed from is reversed and remanded.