In re the Marriage of: John T. Ulrich, Jr., Petitioner-Appellant-Cross Respondent-Petitioner,

v.

Catherine A. Cornell, Respondent-Cross Appellant.

Supreme Court

*No. 90–1220. Oral argument April 28, 1992.—Decided June 8, 1992.*

(Also reported in 484 N.W.2d 545.)

For the petitioner-appellant-cross respondent-petitioner there was a brief by *Thomas E. Warmington* and

*Warmington & Warmington, S.C.,* Waukesha and oral argument by *Thomas E. Warmington.*

For the respondent-cross appellant there was a brief by *Grace M. Masson* and *Glembocki & Masson, S.C.,* Milwaukee and oral argument by *Grace M. Masson.*

STEINMETZ, J. The issue in this case is whether the doctrine of equitable estoppel can be invoked in a child support proceeding to hold a stepparent responsible for child support when allegedly the stepparent makes a representation to adopt and support the child. This is an appeal from the postjudgment order of the Milwaukee county circuit court, Judge Clarence R. Parrish, which declared that the stepfather, John T. Ulrich, Jr., was "estopped from denying an obligation to provide continued support for the child, Jesse Cornell."[1]

The court of appeals affirmed the circuit court's decision by concluding that the "facts meet the test of equitable estoppel." *In re Marriage of Ulrich v. Cornell,* 162 Wis. 2d 462, 472, 469 N.W.2d 890 (Ct. App. 1991). The court's reasoning was that "there were unequivocal representations by John of his intent to support Jesse," and therefore the stepfather was properly ordered to pay support for his stepchild. *Id.*

We agree that equitable estoppel may be an appropriate doctrine to apply in some stepchild support cases. However, in this case, Jesse's mother has failed to demonstrate to a high enough degree of certainty that

---

[1]To apply the doctrine of equitable estoppel, the court must find the following:

"(1) [A]n unequivocal representation of intent to support the child; (2) reliance on that representation by the natural parent or child; and (3) detriment to the natural parent or child as a result of such reliance." *Marriage of A.J.N. & J.M.N.,* 141 Wis. 2d 99, 105, 414 N.W.2d 68 (Ct. App. 1987).

she terminated the natural father's parental rights and obligations because the stepfather made an unequivocal representation of intent to support the child. Furthermore, she has not demonstrated to a high enough degree of certainty that she relied on the stepfather's representation of intent to her detriment. We therefore hold that the stepfather is not equitably estopped from denying support of Jesse and reverse the decision of the court of appeals.

Jesse Cornell was born to Catherine Cornell on July 27, 1977. The natural father was one other than John Ulrich. Jr. On January 20, 1979, Catherine Cornell and John Ulrich, Jr. married. In the same year, Cornell petitioned the court to terminate the parental rights of Jesse's natural father, and the termination was ordered on July 27, 1980.

On the same day, Ulrich signed a petition to adopt Jesse but was unable to proceed with the adoption due to a lack of finances. Because the appropriate papers were never filed with the court, the adoption was never completed. Nevertheless, while Catherine Cornell and John Ulrich, Jr. were married, Ulrich treated Jesse as his own son. The couple also had two children together. The marriage did not last; however, and divorce proceedings were held on April 15, 1986.

At the divorce trial the parties agreed that Ulrich would have custody of all three children. The agreement stated:

> [I]t is in the best interests of the minor children and of the minor child, Jesse Cornell, who is the child of the respondent [Catherine Cornell] but not the child of the petitioner [John Ulrich, Jr.], that the three children continue to live together as siblings and that the petitioner has respondent's authorization to have the physical care and custody of said minor child

until notice and that the petitioner has the right to act as her agent in caring for and raising said minor child and has her authorization and power of attorney to do all things reasonable or necessary to promote the best interests or welfare of said minor child.

Cornell was ordered to pay Ulrich $75 per month in child support.

Jesse lived with his stepfather for approximately 15 months. Then in July of 1987, by agreement of both Ulrich and Cornell, Jesse moved from Ulrich's home to Cornell's residence because of disciplinary problems.

In 1989, Ulrich filed an order to show cause for the purpose of obtaining additional child support from Cornell and to eliminate a maintenance provision which had been left open in the divorce judgment. Cornell, in turn, filed an order to show cause for the purpose of decreasing her child support payments, to obtain support for Jesse and for maintenance. The financial requests of both parties were denied by the family court commissioner. Cornell subsequently requested a review of the decision by the circuit court.

The circuit court decided in favor of Cornell receiving child support for Jesse by holding that she had relied on statements Ulrich made which suggested that he would adopt Jesse. Moreover, this reliance was to her detriment. The court stated: "[T]he change in residence of Jesse Cornell constitutes a change in circumstances justifying a reduction in child support payable by the respondent [Catherine Cornell] to the petitioner [John T. Ulrich, Jr.] and justifying establishing child support from the petitioner to the respondent." The stepfather was therefore "estopped from denying an obligation to provide continued support" for Jesse. Judge Parrish ordered Ulrich to pay $10 per week for the support of

Jesse. Ulrich was also ordered to add Jesse to his family health insurance policy.

The court of appeals affirmed the circuit court's decision. *See Ulrich v. Cornell*, 162 Wis. 2d at 472. The reasoning of the court of appeals for applying equitable estoppel to this particular case and requiring the stepfather to pay support for Jesse was based on the fact that the stepfather had hired and paid for the attorney that handled the termination of parental rights; the stepfather initiated adoption proceedings; the stepfather openly stated in public that he was Jesse's father and would support him; Ulrich registered Jesse at school under the name of Jesse Ulrich; and only when Jesse became a disciplinary problem did Ulrich return Jesse to his natural mother. *Id.* at 471–72. It is important to note that the court cautioned other courts applying equitable estoppel to stepparent cases. The court stated that when applying equitable estoppel, "such action should be taken cautiously so as not to deter voluntary support from a stepparent." *Id.* at 471.

Actions affecting the family as defined by sec. 767.02(1), Stats., are governed by statute. *See Siemering v. Siemering*, 95 Wis. 2d 111, 113, 288 N.W.2d 881 (Ct. App. 1980). A proceeding to compel payment of child support is an action affecting the family under sec. 767.02(1)(f), Stats. Under this chapter, the legislature has stated that only parents are liable for child support.[2]

---

[2]Section 767.25(1), Stats., provides in part:

**767.25** CHILD SUPPORT. **(1)** Whenever the court approves a stipulation for child support under sec. 767.10, enters a judgment of annulment, divorce or legal separation, or enters an order or a judgment in an action under 767.02(1)(f) or (j) or 767.08, the court shall do all of the following:

(a) Order either or both parents to pay an amount reasonable

Under sec. 767.45(5m), Stats., no court in Wisconsin may order a person to support a minor unless that person is the minor's parent either by conception, adoption, adjudication, or presumption, such as when a man is married to the minor's mother when the minor was conceived or born. None of these circumstances applies to Ulrich in the present case.[3]

Wisconsin does not have a statute requiring a stepparent to support a stepchild. In fact, the state continues to adhere to the common law rule that a stepparent has no obligation to support a stepchild after the separation.[4] In *Schmidt v. Schmidt*, 21 Wis. 2d 433, 124 N.W.2d 569 (1963), we held that a husband is entitled to deny paternity in a divorce action despite the fact that both the birth certificate and the baptismal certificate for the child designated the husband as the father; he acted as the child's natural father; and he had never denied paternity until the divorce proceedings. In the present case, the facts do not reach the level of persuasiveness found in *Schmidt*—neither Jesse's birth certifi-

---

or necessary to fulfill a duty to support a child. The support amount may be expressed as a percentage of parental income or as a fixed sum.

[3]Section 767.45(5m), Stats., states in part:

(5m) Except as provided under s. 767.458(3), unless a man is either presumed the child's father under s. 891.41 or adjudicated the child's father either under s. 767.51 or by final order or judgment of a court of competent jurisdiction in another state, no order or temporary order may be entered for child support, legal custody or physical placement until the man is adjudicated the father using the procedure set forth in ss. 767.45 to 767.60 . . ..

[4]In *Vorvilas v. Vorvilas,* 252 Wis. 333, 31 N.W.2d 586 (1948), the court concluded that a husband was not liable for child support when his wife had fraudulently concealed that she was pregnant by another man.

798

cate nor the baptismal certificate designated Ulrich as the father. Thus, based on the plain meaning of statutory law under chapter 767 and the accepted common law rule, we maintain that Ulrich is not financially responsible for Jesse.

Under the appropriate circumstances, it is possible for the theory of equitable estoppel to apply to cases involving child support and custody issues. The support statute is a limiting one; however, the parties can bind themselves by "an unequivocal representation of intent to support the child; (2) reliance on that representation by the natural parent or child; and (3) detriment to the natural parent or child as a result of such reliance." *Marriage of A.J.N. & J.M.N.*, 141 Wis. 2d 99, 105, 414 N.W.2d 68 (Ct. App. 1987).

*Marriage of A.J.N.* involved a child who was born during the marriage. However, the wife was pregnant prior to the marriage, and the husband later learned that he was not the biological father. When the couple divorced, the child was not named as a child of the marriage. The issue presented to the court was whether a nonbiological parent can be equitably estopped from denying paternity. The court stated that "if the facts are appropriate, equitable estoppel should be applied to prevent a nonbiological parent from denying paternity or child support." *Id.* at 103.

The court of appeals concluded that the trial court correctly found the husband not estopped from denying paternity and the responsibility to pay support and stated: "When the husband said that he would love the child even if she was not his, there is nothing in this statement to indicate that he intended to provide financial support for the child if the couple divorced." *Id.* at 106. Furthermore, despite the fact that the husband had

799

treated the child as if the child were his own, the court refused to apply estoppel. The court reasoned that voluntary support of nonmarital children or stepchildren should not be discouraged and the use of estoppel to impose a support obligation on a stepparent must be applied cautiously because the imposition of such a duty may cause people to choose to avoid supporting a child in order not to find themselves permanently obligated to do so. The court also acknowledged that equitable estoppel should not be applied when the stepparent developed a close relationship with the child and entered him into a family unit while acting as the natural parent because this type of family relationship should be encouraged rather than discouraged by the possibility of becoming permanently financially obligated for child support.[5]

We are not convinced that equitable estoppel should apply in the present case. The facts simply do not give rise to an unequivocal representation of intent to support the child, reliance on the representation by the natural parent or detriment to the natural parent as a result of reliance.[6]

[5]For other cases denying equitable estoppel where the stepfather has had a close relationship, *see Miller v. Miller,* 97 N.J. 154, 478 A.2d 351 (1984); *Farris v. Farris,* 58 Wash. 2d 837, 365 P.2d 14 (1961); *Commonwealth v. Sprouse,* 15 Pa. D. & C.2d 701 (1957).

[6]For example, the signing of the adoption petition is not an unequivocal representation of the promise to adopt. Moreover, for Ulrich to say he intended to adopt Jesse does not rise to an unequivocal representation of intent; there needs to be more.

The unusual procedures of this case allowed the termination of parental rights without an immediate adoption of Jesse as a part of the same court appearance. It would have been better for a commitment of adoption before termination, and then, adoption proceedings immediately thereafter.

The mother claims that Ulrich treated Jesse as his own son during their marriage. The trial court found that Ulrich received Jesse into his home with the intention of supporting him while he lived with him and that he intended to have the child live with him until emancipated. The court of appeals converted this finding into a statement that Ulrich at all times "openly held out to the public at large that he was Jesse's father and would support him until he reached adulthood." *Ulrich v. Cornell,* 162 Wis. 2d at 472.

This is admirable conduct which hopefully is experienced by every stepchild. The state has an interest in promoting rather than discouraging such conduct because it is conducive to a harmonious home life and provides emotional well being for children. It would be bad public policy to discourage good intentions such as those exhibited by Ulrich.

*By the Court.*—The decision of the court of appeals is reversed.