**E.H., Plaintiff and Appellee,**

v.

**M.H., Defendant and Appellant.**

Nos. 18020, 18227.

Supreme Court of South Dakota.

Argued Oct. 4, 1993.

Decided Feb. 2, 1994.

Robert L. O'Connor, Sioux Falls, for plaintiff and appellee.

Charles L. Dorothy, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

This is an appeal from a June 2, 1992 divorce decree ordering MH (Stepfather) to pay child support for his two minor stepchildren, MAC and ARC. Stepfather further challenges the divorce court's refusal to review a January 10, 1989 order terminating the natural father's parental rights. We address the following:

I.   Does adoption by estoppel exist in South Dakota?

II.  Was the order terminating the natural father's parental rights valid?

We decline to extend the doctrine of estoppel under these facts and reverse. Issue II was addressed and affirmed in the compan-

ion case, *Matter of M.A.C. and A.R.C.,* 512 N.W.2d 152 (S.D.1994).

## FACTS

When Stepfather married EH (Mother) in 1987, Mother had custody of two children from her previous marriage to CC (Natural Father). Since 1984, Natural Father has had no contact with the children and was repeatedly behind in his child support payments. At one time, he served a 30–day jail sentence for his failure to support, whereupon he began demanding visitation rights. In 1988, Stepfather and Mother spoke to attorney Mark Swanson about terminating Natural Father's parental rights and Stepfather adopting the children.

On January 5, 1989, Natural Father signed a petition voluntarily terminating his parental rights, which was approved by the circuit court five days later. In exchange, he was released from paying future child support. Stepfather, who was out of town when Natural Father signed the petition, soon thereafter announced he would not adopt the children. A month later, Stepfather sued Mother for divorce. Reconciliation quickly followed, and the action was dropped.

On May 17, 1991, new divorce proceedings were initiated. This time, Mother did the filing. Originally, she did not seek child support. Yet, following a change in counsel and a ten-month wait, she amended her complaint to do so based on the theory of adoption by estoppel.

Throughout the marriage, Stepfather was a good stepparent to MAC and ARC. He took them places, taught them things, entertained them, prayed with them, and disciplined them. In Stepfather's and Mother's joint tax return, MAC and ARC, as well as Stepfather's natural daughter, were listed as dependents. When Stepfather and Mother had marital problems in 1989, to calm the waters, Stepfather agreed to become the children's legal guardian in the event of Mother's death. Additionally, the children's surname was legally changed to Stepfather's

surname. When Stepfather recommended that MAC's middle name, which was also Natural Father's common moniker, be changed as well, Mother suggested Stepfather's first name as the substitute, and such was done.

According to the trial court, Mother relied on Stepfather to adopt the children. Despite his refusal to adopt, Stepfather acted in the capacity of father to such a degree that the trial court has estopped him from denying the children his financial support.

## DECISION

■ We are to decide if a stepparent can be forced, by means of equitable estoppel, to provide child support for minor stepchildren after divorcing their natural parent. Usually a stepparent has no legal duty to support the stepchildren after termination of the marriage to the children's natural parent. *Portuondo v. Portuondo,* 570 So.2d 1338 (Fla.App.1990); *Com. ex rel. McNutt v. McNutt,* 344 Pa.Super. 321, 496 A.2d 816 (1985). Even one who accepts the responsibility for a child as in loco parentis * cannot be required to furnish support for the child subsequent to the dissolution of the marriage. *In re Marriage of Holcomb,* 471 N.W.2d 76 (Iowa.App.1991); *In re Marriage of Carney,* 206 N.W.2d 107 (Iowa 1973). When a trial court does award child support, we review the decision under the abuse of discretion standard. *Nelson v. Nelson,* 454 N.W.2d 533, 534 (S.D.1990).

■ Mother and the trial court attempt to justify the child support award by stating that Stepfather has adopted MAC and ARC through equitable estoppel. Estoppel is no stranger to South Dakota law; however, under these facts, it creates an issue of first impression for this Court. To maintain estoppel, *there must have been an act or conduct by the party to be estopped which induces reliance by another to his or her detriment, thus creating a condition that would make it inequitable to allow the guilty party*

---

* The phrase "in loco parentis" refers to a person who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going

through the formalities necessary to legal adoption. *In re Marriage of Carney,* 206 N.W.2d 107, 112 (Iowa 1973).

*to claim what would otherwise be his or her legal rights.* L.R. Foy Const. Co. v. Spearfish Sch. Dist., 341 N.W.2d 383, 386 (S.D. 1983). New Jersey has crafted a variation of this legal premise by establishing what Stepfather calls "adoption by estoppel:"

> To prove equitable estoppel, the custodial parent has the burden to establish not only representation of support and reliance but also detriment, i.e., that the children will suffer future financial detriment as a result of the stepparent's representation or conduct that caused the children to be cut off from their natural parent's financial support ... The burden of establishing economic detriment depends on the facts of the particular case.

*Miller v. Miller,* 97 N.J. 154, 478 A.2d 351, 358–59 (1984). Mother relies heavily on *Miller's* holding that it is only when a stepparent's conduct actively interferes with the children's support from their natural parent that the stepparent may be equitably estopped from denying his or her duty to support the stepchildren. *Id.,* 478 A.2d at 359. To be bound, the stepparent must take positive action which interferes with the natural parent's support obligation. *Id.*

Stepfather's role in the termination of Natural Father's parental rights and pledge to adopt the children were key to the trial court's basis of active interference with Natural Father's support obligation. Conclusion of Law IV states that Mother's reliance on Stepfather's statements and conduct concerning adoption of MAC and ARC prompted Mother to release Natural Father from his legal and natural duty to support his children, in effect, surrendering any claim to future support from Natural Father.

Such reliance is not justified. SDCL 25–5A–19 permits appeals to termination orders within 30 days of filing the order. The order was authorized and filed five days after Natural Father signed it. Stepfather made it clear that he had no intention to adopt the children. Although there is a discrepancy as to when Mother became aware of this, she makes no assertion that the decision was revealed more than 30 days after the January 10 filing. In fact, evidence strongly indicates that Mother may have known within a week. Attorney Swanson knew on the day of Natural Father's signing. Adequate time remained under SDCL 25–5A–19 for Mother to remedy the child support and termination situation with Natural Father; rather, she permitted the statutory time to lapse without ever attempting to re-secure Natural Father's child support payments upon which she now claims to have relied. Recall, Natural Father seldom paid support and was in arrears the day he signed the termination petition. From January 1989 (when she learned of Stepfather's decision) until March 1992 (ten months after she initially filed for divorce), Mother never tried to secure an adoption from Stepfather.

When Mother initially served Stepfather with divorce papers, she sought only alimony. Ten months and one attorney later, she amended her complaint seeking the forgotten child support and forgotten adoption upon which she now claims to have relied. For the trial court to find that Mother would have never consented to the termination had she known of Stepfather's decision is contrary to her subsequent inactions and thus, clearly erroneous in light of the 30–day "think it over" period provided by SDCL 25–5A–19. *See Hilbrands v. Hilbrands,* 429 N.W.2d 750 (S.D.1988).

■ Both Mother and the trial court place great emphasis on the fact that Stepfather treated his stepchildren as his own, spent time with them, and taught them things. In turn, MAC and ARC called him "dad" and his parents "grandpa" and "grandma." *Miller,* the New Jersey case cited above, specifically addressed the issue of the endearment of one's stepchildren.

> It is undisputed that Jay, while living with Gladys, developed a loving relationship with the girls, and that the girls relied on him for emotional support. However, no court has ever applied equitable estoppel to force a husband to support the children of his divorced spouse merely because he developed a close relationship with the children, nurtured them into a family unit with himself as the father, and had the children call him "daddy." We decline to be the first to set such a precedent.

*Miller,* 478 A.2d at 358. *Holcomb,* 471 N.W.2d at 79, also declined. We too reject this rationale. Otherwise, this Court would be discouraging stepparents from establishing close and loving relationships with the stepchildren, *id.,* and, in a sense, reward the stereotypical wicked stepparent for refusing to show love and support for them during the marriage. *Miller* itself refused to enforce estoppel under the above criteria, but the trial court used the New Jersey case to support its thesis nonetheless. An abuse of discretion refers to a "discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D.1984). Imposing child support in this manner is certainly contrary to reason and evidence.

Only last year, Wisconsin spoke on this issue. In *Ulrich v. Cornell,* 168 Wis.2d 792, 484 N.W.2d 545 (1992), stepfather Ulrich hired and paid for the attorney that handled the termination of parental rights by the natural father; he initiated the adoption proceedings; he registered his stepson at school under the surname "Ulrich;" he publicly stated that he was the child's father and would support him; and he signed the petition to adopt the boy but was unable to proceed due to a lack of finances. Because the appropriate papers were never filed with the court, the adoption was never completed. When Ulrich and his wife divorced, she sought child support under equitable estoppel. The Wisconsin Supreme Court held that this legal theory did not apply to the facts and, as *Miller* and *Holcomb* feared, might deter voluntary support from stepparents during the marriage. *Id.,* 484 N.W.2d at 547.

Let us stop this farrago now. This case is not about love and affection—the cornerstones of a proper adoption. *It is about money. Period.* Adoption is reserved for the full-fledged, willing parent, not the reluctant adult. Even the best interests of the children have been ignored. *Matter of B.E.,* 287 N.W.2d 91, 95 (S.D.1979). Findings of fact must support the conclusions of law and judgment. *In the Interest of J.S.N.,* 371 N.W.2d 361 (S.D.1985). We find no sound rationale for ordering Stepfather to adopt these children.

In finding that the fee Stepfather paid to Swanson covered both the termination and the adoption, the trial court also erred. Notwithstanding that it is the approval of the trial court, *not* the payment of fees, that confirms an adoption, we note that Swanson testified the fee paid by Stepfather, charged at an hourly rate, covered the termination only. He testified that an adoption would have been an additional flat charge. The only contrary evidence was Mother's statement that she believed the fee paid by Stepfather covered both proceedings; however, she also admits that Stepfather handled Swanson's bill, not her. As such, Finding of Fact 16 is also in error. *Matter of B.A.M.,* 290 N.W.2d 498 (S.D.1980).

Although the termination proceedings may have been initiated with the belief that Stepfather would adopt the children, such did not occur. Stepfather certainly hurt matters by failing to announce, prior to Natural Father's termination, his decision to not adopt. Nonetheless, Mother learned of the decision soon enough to legally challenge the termination. Currently, adoption in South Dakota can only be accomplished through statutory guidelines. An estoppel version may find acceptance in this Court someday, but we find that the trial court clearly erred in establishing detrimental reliance and adoption by estoppel under these facts. As such, awarding child support was an abuse of discretion. *Herndon v. Herndon,* 305 N.W.2d 917, 918 (S.D.1981).

We need not address Issue II concerning the validity of terminating Natural Father's parental rights as the issue was affirmed in *M.A.C.,* 512 N.W.2d at 154–155.

■ Finally, per *Malcolm v. Malcolm,* 365 N.W.2d 863 (S.D.1985), an itemization for an award of attorneys fees at the trial and appellate court levels was filed by Mother for this case and the companion case. Such a request for the trial court level was not protected on the record and we decline to grant an award. However, as Mother was the prevailing party in *M.A.C.,* appellate fees were awarded. *M.A.C.,* 512 N.W.2d at 154–155. She does not prevail in this appeal and

in the interest of justice, we decline an appellate award unto her. SDCL 15–17–38.

Reversed.

WUEST, SABERS and AMUNDSON, JJ., concur.

MILLER, C.J., concurs in part and dissents in part.

MILLER, Chief Justice (concurring in part and dissenting in part).

I concur in the majority's determination that the trial court clearly erred in finding adoption by estoppel under these circumstances. I also concur in the decision not to award Mother appellate attorney fees.

I dissent as to Defendant's Issue II, the validity of the termination of natural Father's rights, which the majority failed to address in this case. As I expressed in my dissent in *Matter of M.A.C.,* 512 N.W.2d 152 (S.D.1994), the trial court's order terminating natural Father's rights was void for lack of jurisdiction. Additionally, the trial court abused its discretion by failing to set aside the judgment due to procedural defects which affected substantial rights of the parties.

The result of the majority's decisions in this case and *M.A.C.* leave two children without a legal right of support from either their natural Father or their Stepfather. It is a gross miscarriage of justice in which I will not participate.