34 P.3d 887 (2001)
109 Wash.App. 182
STATE of Washington, on behalf of D.R.M., child, Appellant/Cross-Respondent, and
Tracy Ann Wood, Respondent,
Kelly Marie McDonald, parent, Respondent/Cross-Appellant.
No. 45264-9-I.
Court of Appeals of Washington, Division 1.
November 19, 2001.
*889 Lisa Anne Dufour, King County Prosecuting Attorney's Office, Seattle, Counsel for Appellant/Cross-Respondent.
Lorraine Alicia Rimson, Seattle, Counsel for Respondent.
Kathleen Louise Royer, Seattle, Counsel for Respondent/Cross-Appellant.
*888 APPELWICK, J.
In a case of first impression, the State of Washington seeks child support from Tracy *890 Ann Wood on behalf of the child born to Kelly Marie McDonald as a result of artificial insemination. Wood and McDonald lived together as domestic partners for several years, separating shortly before McDonald learned of her pregnancy. Wood is neither a biological parent nor an adoptive parent. This court is asked to enforce a child support obligation against Wood whether or not she is a parent of the child and to create a new cause of action, if necessary to do so. McDonald asks the court to hold that, as a matter of equal protection, the child is entitled to support from Wood. Estoppel and breach of promise theories are also asserted to give effect to promises of financial support made by Wood. We find no deficiency in the statutory scheme that would result in unequal treatment of the child. We find no equal protection problem under the Uniform Parentage Act as applied to these facts.
We decline to create a new cause of action for support of a child by a non-parent. Estoppel and breach of promise theories do not provide a basis for imposing a support obligation on Wood. McDonald's cross-claim for enforcement of the separation agreement is not properly before us and is dismissed. We award no attorneys fees.

FACTS
Kelly McDonald and Tracy Wood began dating in early 1992. The two women moved in together shortly thereafter. They pooled their resources and maintained joint accounts. They managed their financial affairs and their lives as a couple. Although the parties never attempted to marry, nor did they ever participate in any type of union ceremony or commitment ceremony, the court found that the parties' actions were consistent with a marriage.
In March 1995, the parties met with Dr. Patricia Raymer, a family practice physician in Seattle, for counseling on artificial insemination and pre-pregnancy planning. The parties understood as a result of their counseling with Dr. Raymer, as well as from their discussions in their gay parenting support group, that McDonald would be the natural and legal parent of a child born by her, but that Wood would have to adopt the child in order to be the child's legal parent. McDonald and Wood agreed that McDonald would attempt to become pregnant by artificial insemination and that Wood would adopt the child. They understood there was a realistic risk that the adoption might not be approved.
For a year and a half, McDonald attempted to become pregnant by artificial insemination conducted at home. Wood actively participated in the process. In August and September 1996, Dr. Raymer performed intrauterine inseminations on McDonald at her office. Wood was present at both of these appointments. As a result of the September insemination, McDonald became pregnant. She gave birth to a baby girl on June 10, 1997.
In early October 1996, before the parties knew that the September insemination was successful, the parties began a process that ultimately led to a permanent separation. Wood initiated the process.
When the parties learned that McDonald was pregnant, they attended counseling to see if they could work out their differences. By the end of October 1996, however, McDonald had moved out of their home, and the counseling became focused on a means of achieving an amicable breakup as opposed to a reconciliation.
Wood offered in writing to pay $1,000 to $1,200 monthly support payments to McDonald, to be renegotiated after two and one-half years. Wood made the payments beginning in January 1997, six months before the birth. She stopped making the payments in April 1998, ten months after the birth.
After the birth of the child, McDonald severely restricted Wood's access to the child. The court found McDonald did not go forward in a cooperative way to reach a co-equal parenting arrangement for the child or with efforts to adopt.
Wood gave notice in January 1998 that she would discontinue the payments after the April payment. Shortly thereafter, McDonald applied for and began receiving public assistance in the form of medical benefits. As a result of public assistance benefits, the State filed a petition on March 25, 1998, to *891 establish parentage and a child support obligation on Wood.[1] On April 17, 1998, McDonald filed a separate action against Wood seeking an equitable distribution of property and enforcement of the parties' written agreement for financial support. The trial court consolidated the actions in a two-day bench trial.
The trial court concluded that Wood was not a parent to the child and that the Uniform Parentage Act (UPA), RCW 26.26.010 through .905, did not provide a basis to establish a child support obligation for Wood. The court also held that there may exist an "estoppel or contract theory," but the facts of this case did not support enforcement of those theories so as to obligate Wood to support the child.
Both the State and McDonald appealed. This court granted an amici curiae brief in support of the appellants filed by the National Center for Lesbian Rights, Youth Law Center, Children of Lesbians and Gays Everywhere, and Northwest Women's Law Center.

DISCUSSION
I. What is at Issue?
The correct inquiry on appeal is whether the findings of fact are supported by substantial evidence. Landmark Dev., Inc., v. City of Roy, 138 Wash.2d 561, 573, 980 P.2d 1234 (1999). Upon review of the record before this court, we conclude the findings of fact are supported by substantial evidence.[2] Conclusions of law are reviewed de novo. Landmark Dev., Inc., 138 Wash.2d at 573, 980 P.2d 1234.
On appeal the State asserts, "The sole issue is under what circumstances does a non-biologically related person become financially responsible for the support of a child?" The State further asserts, "This case is not about custody or visitation. The only issue in this case is whether a duty to support a child (as a parent) can be imposed upon a non-biologically related person whose direct actions, intent, and financial support resulted in the birth of the child."[3]
McDonald, however, asserts that her child, who was conceived by artificial insemination to parents who are unmarried, is entitled to the same protections as a child, naturally conceived regardless of the marital status of his or her parents. Her challenge is an equal protection challenge.
Amici frame the issue this way: "There is no reason to hold a lesbian who consents to the insemination of a female partner to a lower standard of parental responsibility than is applied to a man who consents to the insemination of a female partner." Amici further asserts Wood should be found to be a parent to the child.
Wood argues that she is not a parent and that there is no basis on which she can be held responsible for the support of the child born to McDonald when she is not the child's parent.
II. Is Wood a Parent to this Child?
A. Who is a parent?
At common law, a parent either was the biological mother or the biological father of a child. The parent-child relationship is biologically established at conception and matures at birth. Adoption did not exist at common law. It is a statutory process that allows a person not biologically a parent to become a parent. Ch. 26.33 RCW. In adoption, the parent-child relationship is established after birth, after investigation, and upon entry of a judicial decree of adoption. The Uniform Parentage Act (UPA), Chapter 26.26 RCW, is another statutory process for determining that a parent-child relationship does or does not exist. Under the UPA, a parent is either a natural parent or an adoptive *892 parent. A natural parent includes a parent who is biologically related to the child and includes one who is otherwise determined to be a parent under the act. RCW 26.26.030.
Wood is not a biological parent to this child. Wood did not adopt this child. This much is undisputed.
McDonald argues Wood acted like a parent in encouraging conception of the child. To establish parentage based on conduct, McDonald must rely on the UPA presumptions or surrogacy provisions. But, the State and McDonald have not assigned error to the trial court's conclusions of law that the UPA does not apply on these facts. Therefore, Wood is not a parent under the UPA.
B. Must a Child have two Parents?
When a lone parent is unable to support the child, the state often must do so. The State suggests the child must have two parents and both must be accountable to support the child. Does a child have to have two parents? Since it is conceded that the application above of the UPA to the facts did not result in the determination that Wood (or anyone else) was the second parent to this child, does this mean the UPA is defective? No, a child need not have two parents. Consider other instances where a child may have only one parent.
The law allows relinquishment of parental rights by one parent. RCW 26.33.080. A parent may have his or her parental rights terminated. RCW 26.33.090(4); RCW 13.34.190. The State may block a paternity action based on the child's best interests, resulting in a single parent for the child. McDaniels v. Carlson, 108 Wash.2d 299, 738 P.2d 254 (1987). The adoption statute does not limit adoption to married couples; single people are eligible to adopt. RCW 26.33.140. The law does not prohibit artificial insemination of a single woman that could result in only one parent for the child. RCW 26.26.050. The surrogacy statute does not limit surrogacy to two parent families. RCW 26.26.210, .220, .240, .250,.260. The fact that the child has only one parent does not mean the UPA is defective.
The State argues this places an unfair burden on the State. Whatever burden this places on the State, that burden provides no basis at law to impose an obligation to support the child on one who is not a parent of the child.
C. Does the Statutory Scheme Violate Equal Protection Rights of the Child or Parties?[4]
Amici argue that the law holds a lesbian who consents to artificial insemination of a female partner to a lower standard of parental responsibility than is applied to a man who consents to the artificial insemination of a female partner. McDonald alleges this violates the child's equal protection rights by treating the child of unmarried, gay parents different from the child of heterosexual parents.
First, the law does not prohibit adoption based on sexual orientation of the adoptive parent. Second, the law provides for determination of parentage regardless of the marital status of the parents. Third, the application of provisions of the UPA to the facts of this case, changing only Wood's gender, would yield the same result.
RCW 26.26.040(d) and (e) could provide a basis for presumptive parentage[5] for a male not married to McDonald and not the biological father:
(d) ... receives the child into his [or her] home and openly holds the child out as his [or her] own;

*893 (e) He [or she] acknowledges his [or her] paternity of the child pursuant to RCW 70.58.080 or in a writing filed with the state registrar of vital statistics....
On the facts here, the presumptions would not be triggered by either a male or female putative parent.[6]
Wood is not being treated differently than an unmarried man under similar facts. McDonald is not being treated differently than an unmarried woman who has a male partner under otherwise similar facts. The child is not being treated differently, based on the gender or sexual orientation of either Wood or McDonald. Neither the child nor McDonald have suffered denial of equal protection. Wood is not a parent of the child and is not obligated to support the child as a parent.
III. An Independent Duty of Support
Appellants argue that even if Wood is not a parent, she should be ordered to support the child. The State framed the issue as one solely of support and not involving custody or visitation. The State cites RCW 26.09.160(1): "The performance of parental functions and the duty to provide child support are distinct responsibilities in the care of the child."
This statute is a contempt provision from the dissolution statute. A parent may not stop paying child support when the other parent fails to comply with other provisions in a decree. While it does recognize support of a child is a distinct duty, it is a duty of a parent under a decree ordering child support. RCW 26.09.160(1) does not stand for the proposition that a child support duty may be imposed without other aspects of the parent-child relationship.
A. The Child Support Statute
Child support is statutory. The provisions found in chapter 26.19 RCW are to be applied in every case involving child support. RCW 26.19.035 provides in part:
(1) Application of the child support schedule. The child support schedule shall be applied:
(a) In each county of the state;

(b) In judicial and administrative proceedings under this title or Title 13 or 74 RCW;
(c) In all proceedings in which child support is determined or modified;

(d) In setting temporary and permanent support.
RCW 26.19.035 (emphasis added). The chapter refers exclusively to the obligation of parents for child support. "The Legislature also intends that the child support obligations should be equitably apportioned between the parents." RCW 26.19.001 (emphasis added). "Support transfer payment" means the amount of money that the court orders one parent to pay to another parent or custodian for child support. RCW 26.19.011(9). Neither parent's total child support obligation may exceed 45% of net income, except for good cause shown. RCW 26.19.065(1). The same is true in sections RCW 26.19.071(1),.075, .080(1), .090(2), (4), (6), and .100; only parents are referred to in the calculation and payment of support. Nowhere is there any hint of a provision for application of this chapter to a non-parent.
B. Comparison to Stepparent Support
How stepparents are treated with respect to child support is an instructive comparison. A stepparent is by virtue of a marriage in a situation comparable to a domestic partnership. A stepparent could meet each of the prongs proposed in the State's test for an intended parent. A stepfather is not the biological father of the child conceived by artificial insemination from a third party donor. Absent a UPA determination of parentage, he would merely be a stepparent, and would be situated much like Wood is situated. A stepparent is liable to third parties for support of a stepchild while married to and *894 living with the child's mother. However, the obligation terminates as a matter of law on decree of dissolution, decree of legal separation, or death. The obligation may be terminated on motion of the stepparent when a petition for dissolution or legal separation is filed. RCW 26.16.205. In addition, the support duty of a stepparent is terminated when there is no longer a custodial relationship. Marriage of Farrell, 67 Wash.App. 361, 367, 835 P.2d 267 (1992).
The parties acknowledge that any residential or emotional relationship between McDonald and Wood has terminated. Wood did not have a custodial relationship with the child. Yet, the State and McDonald ask the court to impose a duty of child support for a duration longer than could be imposed if Wood had been a stepparent and actually cohabited with the child. We decline.
IV. A New Cause of Action
The State proposes for the first time the following four-prong test to determine when a person should be held to be a parent to a child:
1. Was the party in an intimate relationship with the intended parent?
2. Did the party intend for a child to be born and be part of the domestic household?
3. Did the overt actions of the party directly lead to the birth of the child?
4. Did the party financially or otherwise support the conception?
A. Authority to Create a New Cause of Action
The State cites Kaur v. Chawla, 11 Wash.App. 362, 522 P.2d 1198, review denied, 84 Wash.2d 1011 (1974) (whether chapter 26.20 RCW filiation proceedings and RCW 26.24.030 were exclusive means to enforce support for illegitimate children), and Nettles v. Beckley, 32 Wash.App. 606, 648 P.2d 508 (1982) (RCW 26.24.160 requires paternity action to be commenced within two years), in support of the assertion that the UPA is not the exclusive means for determination of parentage or imposing a support obligation. The statutes involved in these cases (all have since been repealed) in one way or another limited the time within which the mother could establish parentage and a support obligation. Failure to timely file resulted in a forfeiture of the child's common law right to support from that parent. The present case does not involve a forfeiture of common law rights. Moreover, the common law duty of support recognized in those two cases was limited to the duty owed by a putative father. At common law, Wood is neither a putative parent nor a parent. The cases prohibit statutory time limits from extinguishing the right to determine if there is a parent-child relationship. The cases cited do not stand for the proposition that we may create a new cause of action for or impose a new duty of support for a child on a non-parent.
B. The Intended Parent
Even if we could create a common law child support obligation upon a non-parent, we decline to create this new breed of intended parent or partial parent who has obligations but no parent-child relationship. The cause of action proposed by the State would impose the duty of financial support on the intended parent, but would deny the intended parent any other parental rights.
The Washington Supreme Court acknowledged a parent has a recognized right to the companionship, care, and custody of his or her minor children of which he or she cannot be deprived without due process. McDaniels v. Carlson, 108 Wash.2d 299, 311, 738 P.2d 254 (1987). The result the State seeks is the same in effect as imposing a duty of support while simultaneously stripping a parent of their right to companionship, care, and custody of his or her minor children without due process of law. While that is not the likely intent of the State, it is unquestionably the effect.
We find no deficiency in the statutory scheme that would require us to create a new cause of action for an intended parent. Creating the new duty of an intended parent to support an intended child would essentially mean judicially rewriting the UPA and creating new policy. If the marriage statute, adoption statute, UPA presumptions or surrogacy statute are inadequate when an unmarried *895 couple, same gender or not, conceive artificially, it is up to the Legislature to make any changes. If a new test for an intended parent is to be created, the Legislature must do the creating.
V. Estoppel
The State asks the court to apply equitable estoppel in order to establish the child support obligation. Whether estoppel is available in this type of case is also a matter of first impression. The State does not argue that Wood was a parent and now must be equitably estopped from denying it. Rather, the State and McDonald argue Wood agreed to become the adoptive parent and to pay future support for the child. Thus, if estoppel is available, promissory estoppel not equitable estoppel is the correct theory available to the appellants.
Equitable estoppel is based upon a representation of existing or past facts, while promissory estoppel requires the existence of a promise. Hellbaum v. Burwell & Morford, 1 Wash.App. 694, 700, 463 P.2d 225 (1969); Annot., Promisory estoppel as basis for avoidance of the statute of frauds, 56 A.L.R.3d 1037, 1042 (1974) (hereafter cited as Annot., Statute of Frauds). Equitable estoppel also is available only as a "shield" or defense, while promissory estoppel can be used as a "sword" in a cause of action for damages. Tiffany Inc. v. W.M.K. Transit Mix, Inc., 16 Ariz.App. 415, 493 P.2d 1220, 1224 (1972); Annot., Statute of Frauds, supra at 1041-42, 1047. Promissory estoppel based on Restatement of Contract § 90 (1932) has long been recognized in this state (Central Heat, Inc. v. Daily Olympian, Inc., 74 Wash.2d 126, 443 P.2d 544 (1968); Hill v. Corbett, 33 Wash.2d 219, 204 P.2d 845 (1949)) and may serve as the basis for an action for damages.

Klinke v. Famous Recipe Fried Chicken, 94 Wash.2d 255, 258, 616 P.2d 644 (1980) (footnote omitted).
The five prerequisites for a cause of action in promissory estoppel have been stated in Corbit v. J.I. Case Co., 70 Wash.2d 522, 539, 424 P.2d 290 (1967), as follows:
(1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.

Central Heat, Inc. v. Daily Olympian, 74 Wash.2d 126, 132, 443 P.2d 544 (1968) (citations omitted).
McDonald argues that she relied on Wood's statements, acts, and financial support when making her decision to become pregnant. The trial court concluded that while there could be an estoppel theory under RCW 26.18.020(3)[7], there was insufficient evidence that McDonald relied on any promise made by Wood. Even if she had relied on a promise, the trial court concluded her reliance was not justified based on the following reasons:
6 .... (a) both parties understood that for Wood to have any rights the arrangement would have to proceed to adoption; (b) both parties recognized that Wood had no legal parental rights or responsibilities in the absence of an adoption thus, any reliance is not justifiable or reasonable where one does not intend to carry through on both sides of the arrangement. Additionally, Ms. McDonald has shown no damages to support her estoppel theory.
McDonald's ability to rely on Wood's promise to become an adoptive parent and support the child, made prior to conception, was conditioned on Wood's assurance that the child would be adopted by Wood, and that Wood would be a parent to the child. Once McDonald challenged Wood's ability to parent the child or to adopt the child, she breached the agreement and she could no longer justifiably rely on Wood's promise of support.
The trial court also made findings of fact that McDonald would have a child one way or *896 another, with or without Wood. The trial court could have concluded McDonald had not changed her position at all, let alone in reliance on Wood's promises.[8]
Amici cite to cases where other jurisdictions have applied an equitable estoppel theory to obligate the payment of child support. In the Matter of Karin T., 127 Misc.2d 14, 484 N.Y.S.2d 780 (1985), the State, as assignee for two children, sought support from Michael T., a biological female who attempted to change her feminine identity. At that time, no birth certificate was requested of either party and a marriage license was issued. The marriage was, however, invalid since the parties were both biologically women. Michael T. and the mother participated in a marriage ceremony presided over by a minister. It was conceded that the children involved in this proceeding were born only after the physician obtained a written agreement by Michael T. that she was the husband, and that the children produced by artificial insemination were her own legitimate children. Michael T. waived any rights to disclaim the children. Michael T.'s signature was affixed on the birth certificate as the father of the children.
The court looked closely at the written agreement entered before conception for the parties' intention and duties:
It is conceded that the children involved in this proceeding were born only after the respondent affixed her name to the agreement indicating she was the husband. The agreement stated in part:
"a. That such child or children so produced are his own legitimate child or children and are the heirs of his body, and
b. That he hereby completely waives forever any right which he might have to disclaim such child or children as his own."
Karin T. v. Michael T., 484 N.Y.S.2d at 782.
We, of course, are not here dealing with a separation agreement. But certainly the document which was signed by the respondent and by which these children were brought into the world gives rise to a situation which must provide these two children with remedies. To hold otherwise would allow this respondent to completely abrogate her responsibilities for the support of the children involved and would allow her to benefit from her own fraudulent acts which induced their birth no more so than if she were indeed the natural father of these children. Of course, the respondent was free to engage and live in any lifestyle which she felt appropriate. However, by her course of conduct in this case which brought into the world two innocent children she should not be allowed to benefit from those acts to the detriment of these children and of the public generally.
Karin T., 484 N.Y.S.2d at 784.
New York had not adopted the UPA and as a result had a narrower definition of "parent" than does Washington. Despite this, the court found compelling reason to conclude Michael T. was a parent.
The term "parent" is not defined in said statute except in biological terms and the Court has found no authority to the contrary. Ballantine's Law Dictionary, Third Edition, defines "parent" as "the father or mother". See 39 American Jurisprudence, 1st Edition, Parent and Child, Section 2. In Black's Law Dictionary 1003 (5th ed.1979), "parent" is defined as "one who procreates, begets or brings forth offspring". The actions of this respondent in executing the Agreement above referred to certainly brought forth these offspring as if done biologically. The contract and the equitable estoppel which prevail in this case prevent the respondent from asserting her lack of responsibility by reason of lack of parenthood. This Court finds that under the unique facts in this case, respondent is indeed a "parent" to whom such responsibility attaches.
Karin T., 484 N.Y.S.2d at 784.
Karin T. relied on Michael T.'s promises. Their written agreement itself attached the parent-child relationship at birth. Michael T. took the children into his home and held *897 them out as his own. On this basis, Michael T. was estopped from denying the parent-child relationship and the corresponding duty of support. McDonald did not rely on Wood's promises to be a parent. McDonald and Wood expressly acknowledged Wood was not a parent at birth, and would become a parent only after an adoption, which might not be approved. The child did not reside with Wood and was not held out as her own. The New York facts may well have allowed us to reach their conclusion under Washington's UPA. However, the facts before us do not support a conclusion that Wood is estopped from denying a promise to adopt or to support the child.
The Wisconsin Supreme Court applied the equitable estoppel doctrine to a stepparent/adoption support case. The Court warned, however, that the doctrine must be applied "`cautiously.'" In re the Marriage of Ulrich, 168 Wis.2d 792, 484 N.W.2d 545, 546 (1992) (citation omitted). The mother in Ulrich remarried and, in the same year, petitioned the court to terminate the parental rights of her child's natural father. Ulrich, 484 N.W.2d at 546. The trial court granted the termination petition. Ulrich, 484 N.W.2d at 546. On the same day, the mother's new husband signed a petition to adopt the child, but because the appropriate papers were never filed with the court, the adoption was never completed. Ulrich, 484 N.W.2d at 546. Nevertheless, the stepfather treated the son as his own. Ulrich, 484 N.W.2d at 546, 549. The couple also had two children together. Ulrich, 484 N.W.2d at 546. The marriage did not last, however, and the parties commenced divorce proceedings. Ulrich, 484 N.W.2d at 546. The Wisconsin Supreme Court concluded that, based on the facts, the mother failed to demonstrate sufficient proof that the stepfather made an unequivocal representation of intent to support the child, that she relied on such a representation, or that any such reliance was to her detriment. Ulrich, 484 N.W.2d at 549. The stepfather was not compelled by estoppel to pay support. Ulrich, 484 N.W.2d at 549.
We would reach the same results based on the lack of reliance, and based on Washington courts' lack of authority under any theory to extend the child support obligation of a stepparent beyond entry of the decree of dissolution, legal separation, or declaration of invalidity of marriage. RCW 26.16.205; Marriage of Farrell, 67 Wash. App. 361, 367, 835 P.2d 267 (1992). Furthermore, no Washington authority has been cited that would allow a prospective adoptive parent to be ordered to pay child support when they do not keep a promise to seek or finalize adoption of a child.
McDonald did not justifiably rely on Wood's promises. She breached the agreement with Wood by not allowing Wood to become a parent, and she did not factually change her position on reliance on Wood's promises. Applying the doctrine of promissory estoppel in this case would be unjust.
VI. Breach of Promise
To establish a support obligation, the State and McDonald also rely on Washington's common law action for breach of promise.[9]
The State claims that for a substantial time before conception, Wood made express promises to McDonald regarding her desire to be a parent and to support the child. To support this claim, the State refers to McDonald's testimony that the two had discussed having a child shortly after they started their relationship. In May 1995, Wood wrote that "I really want you to have a baby. I'm herePlease don't cancel the sperm. I love you and I'm here for you." After the parties broke up but before the birth of the baby, Wood stated "I know that you think that I am scared and want to rid myself of all responsibility. But that really isn't true. I am willing to take full responsibility for the choices we have made together. I want to be a parent to this child. I want to help and support you.... I will try to be there for you and support you." Many of the other exhibits relied upon by the State contain the same message, that Wood was willing to be a *898 parent and wanting to support the child. Other exhibits written or signed by Wood indicated Wood would pay McDonald support for a period of two and one-half years.
A contract requires consideration. King v. Riveland, 125 Wash.2d 500, 505, 886 P.2d 160 (1994). Before an act or promise can constitute consideration, it must be bargained for and given in exchange. King, 125 Wash.2d at 505, 886 P.2d 160. McDonald and Wood agreed McDonald should bear a child and Wood should adopt the child and be a parent to the child. After the parties separated, Wood was allowed little contact with the child and McDonald specifically resisted a parenting plan recognizing Wood as an equal parent. The trial court concluded McDonald had not gone forward in a cooperative way with the adoption. Without the adoption, the consideration for the support obligation failed. McDonald's role in blocking Wood's parenting and adoption constitutes a breach of contract. If the agreement was enforceable when made, McDonald's breach precludes enforcement of the obligations asserted against Wood. Jones Assocs., Inc. v. Eastside Prop., Inc., 41 Wash.App. 462, 466, 704 P.2d 681 (1985).
In Stanard v. Bolin, 88 Wash.2d 614, 565 P.2d 94 (1977), a case cited by the State, the issue was whether the longstanding common law action for breach of promise to marry should be abolished. Stanard, 88 Wash.2d at 617, 565 P.2d 94 (citing Heasley v. Nichols, 38 Wash. 485, 80 P. 769 (1905)). The defendant in Stanard promised that he would marry the plaintiff and support her so that she would never have to work. He also promised to support the plaintiff's son and her mother. At the insistence of the defendant, the plaintiff placed her home on the market for sale and sold most of her furniture at a public auction. When the defendant informed the plaintiff that he would not marry her, the plaintiff sought damages for her pain, impairment to health, humiliation, and embarrassment. She also sought damages for her loss of expected financial security. The Court reaffirmed the continued viability of a cause of action for breach of promise to marry but limited her cause of action to recovery for pain, impairment to health, humiliation, and embarrassment resulting directly from the breach. The Court did not, however, allow her to recover for loss of anticipated and promised future financial support. Stanard, 88 Wash.2d at 620, 565 P.2d 94. Even if Stanard were to be applied here by analogy, there would be no recovery for future child support.
VII. Separation Agreement
In her petition, McDonald asked the trial court to make a fair and equitable division of the property, including debts and liabilities, acquired during the relationship. At trial, the parties agreed that the property issues would be addressed at another time. According to Wood, McDonald's counsel did not subsequently pursue McDonald's claim for a division of property and, therefore, the trial court made no findings on that issue.
The record does not reveal any effort at trial by McDonald to litigate the claim McDonald now makes. Indeed, the trial court's findings of fact and conclusions of law do not refer to enforcement of the separation agreement. The trial court dismissed McDonald's complaint without explanation. Since McDonald did not pursue her claim below, her appeal is not properly before this court.
VIII. Attorney Fees
Wood sought sanctions and attorney fees below, claiming that the petitions for support were frivolous. The trial court found that the claims were not frivolous. Wood has not cross-appealed the court's findings on that issue. Therefore, the issue is not before us. Wood has failed to cite the authority on which she relies for her more general request for an award of fees. Therefore, we deny Wood's request.
In summary, we affirm the trial court's determination that Wood is not a parent of the child born to McDonald, affirm the dismissal of the State's petition for child support, and affirm the dismissal of the mother's petition to enforce the separation agreement. We award no attorneys fees or costs.
WEBSTER and GROSSE, JJ., concur.
NOTES
[1] Under RCW 74.20.220(1), the State has authority to "initiate an action in Superior Court to obtain a support order or obtain other relief related to support for a dependent child on whose behalf the department is providing public assistance."
[2] The State has assigned error to findings of fact 10, 20, and 23 through 41. The State has challenged findings of fact 30 through 41, on the grounds of relevance. Relevance, however, is not a basis for appellate review of the facts.
[3] If we were to find Wood is a parent, she is a parent for all purposes not just support.
[4] The parties do not challenge the trial court's conclusion that the UPA does not apply. While we need not examine the correctness of that conclusion, we must examine whether the UPA and other statutes as applied violates equal protection rights of the parties or child.
[5] The putative parent can rebut these presumptions by clear, cogent, and convincing evidence. RCW 26.26.040(2). Even in those circumstances the State, acting in the child's best interest, is authorized to challenge a presumptive parent's efforts to be determined not to be a parent. RCW 74.20.310 and 26.26.390; McDaniels v. Carlson, 108 Wash.2d 299, 310, 738 P.2d 254 (1987).
[6] RCW 26.27.170 also provides for application of the provisions to a determination of the father-child relationship and, in so far as practicable, to determination of mother-child relationship. Assuming the provision allows the UPA to apply to a lesbian couple to determine if the mother-child relationship exists with both adults, Wood still does not meet the other factors required by the RCW 26.26.040(1).
[7] Chapter 26.18 RCW is a procedural statute. It does not create any duty of support. RCW 26.18.020(3) merely recognizes the duty of support sought to be enforced may have been "created by a court order, operation of law, or otherwise."
[8] Amici argue for the adoption of an intent based test as adopted in In re Marriage of Buzzanca, 61 Cal.App.4th 1410, 72 Cal.Rptr.2d 280 (1998). The but-for test of causation employed in that case would fail here since McDonald did not rely on Wood's promise.
[9] The State and McDonald do not argue the existence of an enforceable surrogate parentage agreement that has been breached.