[No. 30875.   Department One.   April 14, 1949.]

MARY ALICE HILL et al., *Respondents*, v. GEORGE T. CORBETT
et al., *Appellants*.[1]

*Brown & Hawkins*, for appellants.

*Lee C. Delle*, for respondents.

[1]Reported in 204 P. (2d) 845.

MALLERY, J.—Prior to August 1, 1944, appellants were tenants of a portion of a garage building in Yakima. Their landlords, the respondents, desired to lease the entire building to a single tenant. Appellants could not use the entire building but were eager to continue their car storage business in that location. August 1, 1944, they leased from respondents for a five-year term the entire building for five hundred dollars a month, planning to sublet the parts of the building they could not use.

After the execution of the lease, appellants bought other realty one block from the demised premises, intending to improve the newly acquired realty with a ramp garage into which they could move their business when the lease expired.

Soon after the lease was executed, it was discovered by appellants that desirable sublessees could not be secured for such a short term. Thereupon, appellants negotiated with respondents for an extension of the term. February 9, 1945, an instrument drafted by respondents' attorney was signed and acknowledged by each of the parties before their respective notaries public. The clause in that instrument which is material in this appeal is:

"That in consideration of said lease the first parties do hereby grant unto the second parties the option to extend said lease for the period of five years from the expiration thereof at a monthly rental of $600 per month, the other terms and conditions of said lease to remain as at present."

Both parties admit that no money consideration was given for the option.

Shortly after respondents gave the option to extend the lease, appellants leased their newly acquired realty for ten years, with options for two additional five-year terms, and gave up their plan for improving it and occupying it in 1949.

In the summer of 1946, the Woolworth Co. sought to acquire the garage building. During the course of the Woolworth negotiations, respondents had occasion to consider the legal effect of the option upon their title.

July 20, 1946, respondents served upon appellants written notice of cancellation and withdrawal of the option. The notice recited that the option was and at all times had been without consideration. This was done before the appellants had elected to exercise their option. Appellants denied that respondents could withdraw the option, asserted that it was enforcible to the end of the term, and gave notice of their election to extend the lease for an additional five years.

In January, 1948, respondents commenced this action to cancel the option of February 9, 1945, to compel its surrender to respondents, and to quiet their title to the premises. Appellants appeal from judgment granting respondents' prayer.

Assignments of error: (1) The court erred in holding the option agreement not to be a sealed instrument and in permitting evidence to show lack of consideration. (2) The court erred in concluding that the respondents had no knowledge of appellants' negotiations with reference to other property and in holding that such knowledge was essential to constitute the act to appellants' detriment a consideration for the option.

Appellants contend that any instrument so solemnly signed and acknowledged as to entitle it to be recorded is a sealed instrument.

From this, it is argued that, under the common law, a private seal imports consideration, and, notwithstanding that seals are abolished by Rem. Rev. Stat., § 10556 [P.P.C. § 497-5], evidence as to consideration is inadmissible, excepting possibly in support of it.

We think the instrument here in issue is not a sealed instrument. The signatures of the parties were not accompanied by a scroll, seal, the printed or written word "SEAL" or "L.S." or any other symbol which manifested an intention to make the instrument a specialty. See 47 Am. Jur. 487 *et seq.*, Seals, §§ 2 and 4; 56 C. J. 890, 893, Seals, §§ 1 and 5, and the cases cited therein.

As to the recital "signed and sealed" in the certificate of acknowledgment, if the instrument had borne a seal it

may be conceded that such a recital would have been corroborative, but the recital standing alone will not change an unsealed instrument into a sealed one. See 56 C. J. 895, Seals, § 6C., Recital in Instrument, and cases cited in footnote 60 therein. See, also, Rem. Rev. Stat., § 10566 [P.P.C. § 499-9], which repealed Rem. Comp. Stat., § 10566, and abolished the use of the word "sealed" in certificates of acknowledgments.

Appellants have called our attention to statutes in other states making certain instruments enforcible without consideration and to certain recommendations heretofore made to our legislature to follow suit.

We are asked to repudiate the legal fictions involved in the doctrine of consideration and to enforce contracts which are earnestly and soberly negotiated by parties in good faith and are solemnly formalized in writing by signatures and acknowledgments.

We decline the invitation, not for lack of reasons to support it, but because it should be addressed to the legislature.

As to appellants' second assignment of error concerned with the doctrine of promissory estoppel, it is said in Restatement of Contracts, chapter 3, § 90:

"§ 90 Promise Reasonably Inducing Definite and Substantial Action.

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

Williston, in vol. I of his treatise on contracts discusses this doctrine in §§ 139 and 140 of chapter VII, "Promises Requiring Neither Mutual Assent Nor Consideration." At page 494 he speaks of estoppel as a substitute for consideration and sets forth the elements prerequisite to the application of the doctrine. They are: (1) a promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the

promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.

■ Appellants have not satisfactorily established that the respondents (promisors) should have *reasonably expected* them (promisees) to change their position (the second element of promissory estoppel as previously set out) in their separate realty transactions. That being so, the knowledge or lack of knowledge of the respondents regarding those transactions at the time the offer was withdrawn is not determinative of what they should have *reasonably expected* at the time the option was given. Moreover, we think appellants' speculations as to the future substantial hardships to arise out of location difficulties have not been sufficiently concrete and definite to take them out of the realm of mere probability.

This being decisive of the case, the court's conclusion that respondents' knowledge of the appellants' collateral realty transactions was a necessary element in the doctrine of promissory estoppel, was harmless error not affecting the result.

■ The acceptance by the appellants of the respondents' offer in the option before it was withdrawn, would have constituted a contract, but they could not require the respondents to keep the offer open in the absence of consideration for the option. It is not contended that there was any consideration to keep the offer open. At the time of their collateral realty transactions, appellants could have made their future course of action secure by exercising their option, which was then open. They elected to keep their own course open until after the offer was withdrawn.

The judgment is affirmed.

JEFFERS, C. J., BEALS, STEINERT, and HILL, JJ., concur.