[No. 61647-7.    En Banc.    December 15, 1994.]

RICHARD KING, ET AL, *Respondents*, v. CHASE RIVELAND, ET AL, *Appellants.*

*Christine O. Gregoire, Attorney General,* and *Thomas J. Young, Assistant,* for appellants.

*Preston Gates & Ellis,* by *Paul J. Lawrence* and *Marc C. Levy* (cooperating attorneys for *American Civil Liberties Union of Washington),* for respondents.

MADSEN, J. — At issue in this case is the validity of the trial court's order upholding a confidentiality agreement and permanently enjoining the release of certain information obtained from inmates participating in the Sexual Offender Treatment Program at the Twin Rivers Correction Center in Monroe, Washington.

## FACTS

In 1988, the Department of Corrections (DOC) instituted the Sexual Offender Treatment Program (SOTP) at the Twin Rivers Correction Center. According to its director, the purpose of the program is to provide therapy to inmates convicted of sex crimes in order to reduce their risk of re-offense upon release into the community.

SOTP staff maintain a file on each participant in the program. These files contain initial interview notes, test results, a summary of the inmate's answers to the tests, progress evaluations, psychological evaluations, evaluations conducted by DOC staff, staff notes on therapy sessions and summaries of the inmate's participation in group sessions, a treatment summary, a relapse prevention plan, and other materials. Some of these materials contain reports on what the inmate said during the course of treatment.

After the first 6 months that the SOTP was in operation, all inmates who entered the program were asked to sign a confidentiality agreement. If the inmate declined, and the reason for this refusal was that he could not abide by the conditions of the agreement, he was not accepted into the program. If he declined merely because he did not want to sign the agreement, he was accepted into the program and treated as though he had signed the agreement. The agreement, hereafter referred to as the Confidentiality Statement, provided as follows:

I, _____, understand that what I say or write as part of my treatment will be treated with confidentiality. Confidentiality means that the information I give to treatment staff will not be discussed or given to anyone besides other treatment staff who need to be informed to assist in my treatment. However, there are some specific types of information that will not remain confidential. These are:

1) Information that I may hurt myself.

2) Information that I may hurt others.

3) Information about threats to the security of the Institution.

4) Specific information about child abuse occurring in the last seven years.

5) Information about the abuse of a handicapped individual occurring during the last seven years.

and,

6) Specific information pertaining to unsolved crimes.

My signature below means that I understand all of the material above and any questions I had about the above material have been answered by a Sex Offender Treatment Program staff member(s).

Clerk's Papers, at 56.

On October 17, 1990, pursuant to the Community Protection Act of 1990, the DOC issued a revised confidentiality

504

agreement to the inmates still in the SOTP. The new agreement provided that the rules of confidentiality were not applicable if a prosecuting attorney or the Attorney General were considering whether to have an inmate committed as a sexually violent predator. Thus, when requested, "a full copy of the Sex Offender Treatment Program file will be provided to the DOC End of Sentence Review Committee and to the designated prosecuting attorney or attorney general for those individuals who meet the statutory definition of a 'sexual violent predator' and who are approaching the end of their sentence". Clerk's Papers, at 60. DOC interpreted this policy as retroactive and applied it to all participants in the SOTP back to the inception of the program.

Former SOTP participants Richard King and Richard Jackson brought this action on behalf of the class of all persons who participated in the SOTP prior to October 17, 1990, to challenge the DOC's revocation of its earlier Confidentiality Statement. They sought both declaratory and injunctive relief prohibiting the DOC from releasing any information from an SOTP file except in strict accordance with the terms of the Confidentiality Statement.

King and Jackson (hereafter referred to as the Plaintiffs) then filed a motion requesting the court to certify the case as a class action under CR 23(b)(2). The trial court granted the motion, and the Court of Appeals denied discretionary review of its decision. The Plaintiffs subsequently moved for summary judgment, seeking a holding that the DOC's revocation of its promise of confidentiality constituted a breach of contract and violated several constitutional rights of the class. The Plaintiffs also sought to enjoin the DOC from disclosing any information that it had promised would remain confidential. The trial court granted the motion on the ground that the Confidentiality Statement was an enforceable contract between the DOC and the class members. The court then issued a Judgment and Permanent Injunction prohibiting the DOC from releasing information from the Plaintiffs' SOTP files except in accordance with the terms of the Confidentiality Statement. The DOC appealed,

and the Court of Appeals certified the appeal to this court. Four issues are presented, all of which apply only to inmates who participated in the SOTP prior to October 17, 1990, who did not sign the DOC's new confidentiality policy.

## I

We consider initially whether the Confidentiality Statement is an enforceable agreement. The Plaintiffs contend here, as they did before the trial court, that the Confidentiality Statement was a contract which has been or will be breached by the release of the entire SOTP file to any person not involved in the treatment of the inmate.

■ ■ Every contract must be supported by a consideration to be enforceable. *Dybdahl v. Continental Lumber Co.*, 133 Wash. 81, 85, 233 P. 10 (1925). Consideration is any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange. *Huberdeau v. Desmarais*, 79 Wn.2d 432, 439, 486 P.2d 1074 (1971); *Guenther v. Fariss*, 66 Wn. App. 691, 696, 833 P.2d 417 (1992), *review denied*, 120 Wn.2d 1028 (1993). Before an act or promise can constitute consideration, it must be bargained for and given in exchange for the promise. *Ward v. Richards & Rossano, Inc.*, 51 Wn. App. 423, 432, 754 P.2d 120, *review denied*, 111 Wn.2d 1019 (1988); *Williams Fruit Co. v. Hanover Ins. Co.*, 3 Wn. App. 276, 281, 474 P.2d 577, *review denied*, 78 Wn.2d 995 (1970).

We do not find consideration present in this case. The Confidentiality Statement was not an agreement characterized by mutually agreed-upon conditions entered into voluntarily by both parties. *See* Ellsworth A. Fersch, Jr., *Psychology and Psychiatry in Courts and Corrections* 46 (1980) (discussing agreements made by authority figures that are contracts only in name). Here, the Plaintiffs agreed to conditions that they could refuse only to their disadvantage — that is, no participation in the SOTP. While the Confidentiality Statement promised confidentiality of statements and writings made during treatment, it also promised the disclosure thereof under certain circumstances. Would-be par-

ticipants bargained for none of those conditions and promised nothing in return. Thus, the Confidentiality Statement was presented as a "take or leave it" proposition. *See* Fersch, at 46. Without consideration present, there is no valid contract.

■■ Plaintiffs argue in the alternative that the Confidentiality Statement is enforceable pursuant to the doctrine of promissory estoppel. Promissory estoppel renders a promise made without consideration enforceable. *Central Heat, Inc. v. Daily Olympian, Inc.*, 74 Wn.2d 126, 132, 443 P.2d 544, 44 A.L.R.3d 750 (1968); *Hill v. Corbett*, 33 Wn.2d 219, 222, 204 P.2d 845 (1949). There are five prerequisites for a recovery in promissory estoppel: (1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise. *Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 539, 424 P.2d 290 (1967) (citing Restatement of Contracts § 90 (1932)).

■ We turn first to the element of promissory estoppel requiring a promise, and the rule that this element is not satisfied if the promise is made by an unauthorized agent. *Corbit*, at 539. The DOC argues here that Janet Barbour, Superintendent of the Twin Rivers Correction Center, never gave SOTP Director Barbara Schwartz the authority to enact the Confidentiality Statement. In an affidavit, Barbour states that the Confidentiality Statement was drafted and implemented by members of the SOTP staff. "I was aware that the SOTP staff treated the SOTP files with some level of confidentiality but I cannot recall ever reviewing the original Confidentiality Statement. The Confidentiality Statement was never officially adopted by me." Clerk's Papers, at 370. Because of this lack of express authorization, the DOC contends that the agreement is unenforceable. The Plaintiffs respond that while express authorization may have been absent, Schwartz had either actual or apparent authority to enact the Confidentiality Statement.

■ An agent's authority to bind his principal may be of two types: actual or apparent. Actual authority may be express or implied. Implied authority is actual authority, circumstantially proved, which the principal is deemed to have actually intended the agent to possess. *Deers, Inc. v. DeRuyter*, 9 Wn. App. 240, 242, 511 P.2d 1379 (1973) (citing 3 Am. Jur. 2d *Agency* § 71 (1962)). Both actual and apparent authority depend upon objective manifestations made by the principal. *Smith v. Hansen, Hansen & Johnson, Inc.*, 63 Wn. App. 355, 363, 818 P.2d 1127 (1991), *review denied*, 118 Wn.2d 1023 (1992) (citing Restatement (Second) of Agency § 7 cmt. b, at 29 (1958)). With actual authority, the principal's objective manifestations are made to the agent; with apparent authority, they are made to a third person. *Smith*, at 363. Such manifestations will support a finding of apparent authority only if they have two effects. First, they must cause the one claiming apparent authority to actually, or subjectively, believe that the agent has authority to act for the principal. Second, they must be such that the claimant's actual, subjective belief is objectively reasonable. *Smith*, at 364.

■ One authority states that the most usual example of implied actual authority is found in those instances where the agent has consistently exercised some power not expressly given to the agent and the principal, knowing of the same and making no objection, has tacitly sanctioned continuation of the practice. Harold G. Reuschlein and William A. Gregory, *Agency and Partnership* § 15, at 40-41 (1979). In addition, this court has stated that "[a]uthority to perform particular services for a principal carries with it the implied authority to perform the usual and necessary acts essential to carry out the authorized services". *Walker v. Pacific Mobile Homes, Inc.*, 68 Wn.2d 347, 351, 413 P.2d 3 (1966). The Restatement provides a closely related explanation of apparent authority:

> Likewise, as in the case of [actual] authority, apparent authority can be created by appointing a person to a position, such as that of manager or treasurer, which carries

> with it generally recognized duties; to those who know of the appointment there is apparent authority to do the things ordinarily entrusted to one occupying such a position, regardless of unknown limitations which are imposed upon the particular agent.

*Smith*, at 365 (quoting Restatement (Second) of Agency § 27 cmt. a, at 104 (1958)).

Here, the superintendent knew that the SOTP staff was treating the information received from inmates with a certain level of confidentiality and did nothing to interfere with this practice, thus giving it her tacit approval. Similarly, we believe that an individual in charge of a program dealing with psychological treatment of such a sensitive nature would have the implied authority to grant participants a certain degree of confidentiality with regard to the information they disclosed during treatment.

The DOC maintains, however, that since total confidentiality was not essential to the effectiveness of the SOTP, the SOTP director did not have implied authority to promise such confidentiality. The DOC also contends that apparent authority is absent because any reliance on the Confidentiality Statement by the inmates was unreasonable. This is because, according to the DOC, another DOC policy states that "[d]isclosure of information and access to records is restricted to those with an official right to such information and records in accordance with Policy 280.510 . . .". Clerk's Papers, at 385. DOC policy 280.510 provides that "[a]ll public records are disclosable except those which violate a person's right to privacy . . .". Clerk's Papers, at 377. The DOC argues that since the SOTP files are public records and since the end-of-sentence review committee, the prosecuting attorney and the Attorney General have an "official right" to SOTP information, the Plaintiffs did not exercise ordinary prudence in relying on the Confidentiality Statement. According to the DOC, the existence of other DOC policies required a person of reasonable prudence to make further inquiry regarding the level of confidentiality accorded the SOTP files.

Plaintiffs respond that the DOC has misread its own policies, since policy 280.510 provides that nonconviction data about an inmate are not generally disclosable. According to Plaintiffs, an inmate's SOTP file is nonconviction data, and thus nondisclosable under the DOC's policies.

■ Regardless of how DOC policy is interpreted, ordinary prudence does not require an inmate to question the staff's authority to enter into the Confidentiality Statement or to ask to see any other DOC policy regarding confidentiality. "One dealing in good faith with an agent who appears to be acting within the scope of his authority is not bound by undisclosed limitations on the agent's power." *Walker*, at 351. Moreover, we are not convinced that the Confidentiality Statement violated other DOC policies. Thus, we conclude that the inmates' belief that the SOTP staff had the authority to promulgate the Confidentiality Statement was objectively reasonable and that the staff had the apparent, if not the implied, authority to enter into the resulting agreement. For these same reasons, we also find that the inmates were justified in relying on the promise of confidentiality, thus satisfying another element of promissory estoppel.

The element of promissory estoppel requiring the promisee to change his position in response to the promise also is satisfied, since the promise of confidentiality was made before the inmate was allowed to participate in the SOTP program and presumably rendered the inmate more willing to disclose confidential information. Indeed, those inmates who refused to sign or to abide by the confidentiality agreement were not accepted into the program.

Finally, we consider whether enforcement of the promise is necessary to avoid an injustice. The DOC argues the converse: that enforcement will create an injustice. Under its interpretation, the Confidentiality Statement violates both the letter and the spirit of Washington's Community Protection Act, in particular RCW 9.94A.151 and RCW 71.09.025.

Both statutes provide that when it appears that a person may meet the criteria of a sexually violent predator, the

agency with jurisdiction over that inmate shall refer that person in writing to the prosecuting attorney of the county where that person was convicted, 3 months before that inmate's anticipated release from total confinement. In making this referral, the agency

shall inform the prosecutor of the following:

(i) The person's name, identifying factors, anticipated future residence, and offense history; and

(ii) Documentation of institutional adjustment and any treatment received.

RCW 9.94A.151(1)(b); RCW 71.09.025(1)(b).

█ The DOC argues that "documentation of institutional adjustment and any treatment received" is equivalent to an inmate's entire SOTP file. Thus, the statutory language requires the DOC to disclose these files to prosecutors. The Plaintiffs respond that "documentation" is in no way equivalent to an entire SOTP file. The dictionary definition of the term does not resolve the dispute, since documentation is defined simply as "the act or an instance of furnishing or authenticating with documents". *Webster's Third New International Dictionary* 666 (1968). While the DOC maintains that resorting to legislative history is unnecessary, the disagreement concerning the meaning of "documentation" makes an examination of the 1990 versions of the statutes useful. *See State v. Komok,* 113 Wn.2d 810, 815, 783 P.2d 1061 (1989); *State v. Dubois,* 58 Wn. App. 299, 303, 793 P.2d 439 (1990) (review of legislative history is appropriate where legislative intent is not apparent from the language of a statute).

As originally enacted, the statutes required the referral to a prosecuting attorney to include, in addition to name, residence and offense history, "[a] brief narrative describing the person's conduct during confinement and any treatment received". Laws of 1990, ch. 3, § 122(2), p. 28. According to a House Bill Report, the requirement of documentation was substituted for that of a brief narrative to relieve the agencies of the responsibility to supply a narrative. In summarizing the 1992 legislation, the final legislative report states

that "[t]he agency must document the person's institutional adjustment and any treatment received. The agency does not have to prepare a narrative description." *1992 Final Legislative Report,* at 15.

After reviewing this history, the trial court concluded that the 1992 amendment was not intended to be a substantive change in the nature of the information provided, but only a change in its form. The court added that since disclosure of the entire SOTP file was not the equivalent of a "brief narrative", such disclosure could not be regarded as documentation of treatment. Clerk's Papers, at 489. Thus, the court found no conflict between the Confidentiality Statement and either the 1990 or 1992 versions of the Community Protection Act.

■ The trial court's conclusions are sustainable. It does not appear that documentation of institutional adjustment and treatment necessarily includes a history of what the inmate has said or written during treatment. This is particularly so if documentation is seen as equivalent to a brief narrative.

■ The DOC maintains further, however, that such a reading of the statutory language fails to give effect to the public policy of disclosure that underlies the Community Protection Act, and that enforcement of the Confidentiality Statement would violate this policy. The test for whether or not an agreement is contrary to public policy is whether it has a " 'tendency to evil', to be against the public good, or to be injurious to the public". *Marshall v. Higginson,* 62 Wn. App. 212, 216, 813 P.2d 1275 (1991) (quoting *Golberg v. Sanglier,* 27 Wn. App. 179, 191, 616 P.2d 1239 (1980), *rev'd on other grounds,* 96 Wn.2d 874, 639 P.2d 1347, 647 P.2d 489 (1982)); *see also Makinen v. George,* 19 Wn.2d 340, 354, 142 P.2d 910 (1943).

The DOC finds the policy regarding disclosure best stated in section 116 of the act, which is now included as an explanatory note to RCW 4.24.550. That statute provides, in essence, that public agencies may release information regarding sex offenders to the public without fear of liability. In enacting this provision, the Legislature stated as follows:

The legislature finds that sex offenders pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders is a paramount governmental interest. The legislature further finds that the penal and mental health components of our justice system are largely hidden from public view and that lack of information from either may result in failure of both systems to meet this paramount concern of public safety. Overly restrictive confidentiality and liability laws governing the release of information about sexual predators have reduced willingness to release information that could be appropriately released under the public disclosure laws, and have increased risks to public safety. Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government. Release of information about sexual predators to public agencies and under limited circumstances, the general public, will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals.

Therefore, this state's policy as expressed in section 117 [RCW 4.24.550] . . . is to require the exchange of relevant information about sexual predators among public agencies and officials and to authorize the release of necessary and relevant information about sexual predators to members of the general public.

Laws of 1990, ch. 3, § 116, p. 25. The DOC argues that the Confidentiality Statement is directly contrary to this policy and its requirement that public agencies exchange relevant information regarding sexual predators.

This court recently considered the language of section 116 in *State v. Ward*, 123 Wn.2d 488, 869 P.2d 1062 (1994). We did so in response to an argument that the public disclosure of sex offender registration information constituted increased punishment and violated the prohibition against ex post facto laws. In determining that no additional penalty resulted from disclosure, this court gave a very narrow reading to the type of disclosure appropriate under RCW 4.24-.550. We were particularly influenced by the language providing for disclosure only of "necessary and relevant" information and only "under limited circumstances". *Ward*, at 502. Rather than reading the policy statement as authorizing a broad disclosure of information about a sexually vio-

lent predator to the public, this court concluded in *Ward* that the Legislature's pronouncement "evidences a clear regulatory intent to limit the exchange of relevant information to the general public to those circumstances which present a threat to public safety". *Ward*, at 502.

In the present case, the trial court pointed to other language in section 116 — namely, its reference to the public disclosure laws. As stated above, section 116 complains that confidentiality laws had inappropriately "reduced willingness to release information that could be appropriately released under the public disclosure laws". Laws of 1990, ch. 3, § 116, p. 25.

The disclosure laws of relevance to this case are set forth in the Uniform Health Care Information Act of 1991, RCW 70.02. This act provides that a health care provider "may not disclose health care information about a patient to any other person without the patient's written authorization". RCW 70.02.020. In addition, "[a] disclosure made under a patient's written authorization must conform to the authorization." RCW 70.02.020. The trial court found that the SOTP constitutes a form of mental health care provided by mental health providers. The court also found that the DOC's proposed release of information would not conform to the authorization signed by the inmates.

The DOC responds that disclosure of the files is mandatory under RCW 70.02.050(2)(b), which provides that a health care provider shall disclose health care information about a patient without the patient's authorization if the disclosure is to federal, state, or local law enforcement authorities to the extent the health care provider is required by law. RCW 70.02.050(2)(b). As discussed earlier, however, the Community Protection Act does not require disclosure of the entire SOTP file and the DOC cites to no other law mandating disclosure.

As a corollary to this discussion, we also find the importance that this court and other authorities have placed on confidentiality in psychological treatment worth examining in determining whether the Confidentiality Statement violates public policy. In a case dealing with psychiatric care,

this court noted that a variety of cases dealing with psychiatrist-patient relationships have emphasized the need for confidentiality between the psychiatrist and the patient. *Peninsula Counseling Ctr. v. Rahm*, 105 Wn.2d 929, 934, 719 P.2d 926 (1986).

> Ample evidence . . . has shown that disclosure of communication between a psychiatrist and a patient would deter a small but significant number of individuals from seeking much needed care, and the potential disclosure would prevent other individuals from participating fully once therapy began.

*Peninsula Counseling Center*, at 934. Another authority states that confidentiality between patient and clinician has long been regarded as a cornerstone of effective mental health treatment. *Psychology, Psychiatry, and the Law: A Clinical and Forensic Handbook*, at 536 (Charles P. Ewing ed., 1985):

> To succeed in the therapeutic role, the mental health professional must have access to a wide variety of information regarding the patient — often information which the patient would be quite reluctant to disclose in any other context.

Ewing, at 536.

It is important to remember that the information at issue consists of what an inmate said or wrote during treatment. One authority describes just what such information may entail, and why its disclosure should be discouraged:

> Even more important is the nature of the psychotherapeutic material recorded. All of it is the free flow of thought, encouraged by the therapeutic process, *uncensored* by reality, truth, or reason, in order to reach the distortions and unreason of the unconscious. Yet the law (chiefly the legal profession) would demand this be exposed as "truth." All the wild fantasy, childhood distortions, and the "protective," sometimes self-damaging, beliefs created for psychological defenses that get into such records will be exposed in public as "truth."

Maurice Grossman, *Confidentiality: The Right to Privacy Versus the Right To Know*, in *Law and the Mental Health Professions*, at 145 (Walter E. Barton & Charlotte J. Sanborn eds., 1978).

██ To order the disclosure of such information at the expense of the Confidentiality Statement would clearly con-

stitute an injustice. The public policy in favor of confidentiality with regard to mental health information need not conflict, however, with that in favor of the disclosure of information concerning sexual offenders. The DOC states that the Legislature has made a choice to favor public safety over the effectiveness of sexual offender treatment, but it does not appear that the two policies are mutually exclusive. Contrary to the DOC's position, it is possible to give prosecuting attorneys and the public the information they need and are authorized to receive without impinging upon the promises made in the Confidentiality Statement. Accordingly, the Confidentiality Statement does not have a "tendency to evil" or to injure the public. We conclude that the Confidentiality Statement violates neither the letter nor the spirit of the Community Protection Act, and is enforceable pursuant to the doctrine of promissory estoppel.

## II

We next consider whether the injunction should be reversed because the Plaintiffs' claims are premature. The duration and scope of an injunction are decided on the facts of each case at the trial court's discretion. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 63, 738 P.2d 665 (1987); *Brown v. Voss*, 105 Wn.2d 366, 372, 715 P.2d 514 (1986). The trial court's decision exercising that discretion will be upheld unless it is based upon untenable grounds, or is manifestly unreasonable, or is arbitrary. *Washington Fed'n of State Employees, Coun. 28 v. State*, 99 Wn.2d 878, 887, 665 P.2d 1337 (1983); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). This court also has stated that the entry of an injunction is justified if the party seeking relief shows (1) that he or she has a clear legal or equitable right, (2) that he or she has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him or her. *Tyler Pipe Indus., Inc. v. Department of Rev.*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982); *Port of Seattle v. International Longshoremen's Union*, 52 Wn.2d 317, 319, 324 P.2d 1099 (1958).

The injunction entered by the trial court enjoined the DOC from releasing any documents or other information from the SOTP file of any inmate who participated in the SOTP prior to October 17, 1990, to anyone other than SOTP treatment staff, as provided in the Confidentiality Statement. The injunction did not apply to any inmate who signed the new confidentiality agreement that allowed release of the SOTP files, nor did it apply to the psychological evaluation summary, the relapse prevention plan, the unit team notes, or information that fell within the six enumerated exceptions to the Confidentiality Statement.

The DOC argues that this injunctive relief was improper because it was premature. The DOC maintains that the Plaintiffs may raise their claims in a civil commitment proceeding if one is filed against them, and that they have an adequate remedy at law pursuant to a motion to suppress during such a proceeding. Since no civil commitment proceeding has yet been filed against any of the Plaintiffs, the DOC contends that the information at issue has not been used against them and that their claims of injury are premature. The DOC also contends that mere allegations of harm are insufficient to justify the issuance of an injunction, and that any harm the Plaintiffs have demonstrated consists only of embarrassment or discomfort, which is not the type of actual, substantial injury required to warrant injunctive relief.

Plaintiffs respond that the harm to be remedied is not just the disclosure of confidential information in a sexually violent predator proceeding, but *any* disclosure of confidential information in breach of the DOC's contractual obligations. They maintain that damages cannot remedy this breach, given the sensitivity of the information at issue. Plaintiffs also argue that a resolution of the enforceability of the Confidentiality Statement now is in the best interests of judicial economy and consistency.

As a practical matter, a harm more severe than embarrassment already may have resulted from disclosure of the SOTP files. At the time the complaint was filed, the Sno-

homish County Prosecutor's office and the Attorney General were deciding whether to file a sexual predator petition against Richard Jackson, one of the two named Plaintiffs in this case. Jackson has been asked to submit to a psychological examination, and believes that the DOC has released his treatment file to the Snohomish County Prosecutor's office. Moreover, the superintendent of the Twin Rivers Correction Center states that the end of sentence review committee has requested information on 31 of the 277 inmates who entered the SOTP prior to October 1990. (Of those 31, 13 inmates signed the original Confidentiality Statement but did not sign the revised agreement.) The superintendent adds that "[w]hen the ESR Committee requests information on inmates in the SOTP, we either provide the Committee with a termination report, treatment summary report, psychological evaluation, or a copy of all materials in the SOTP treatment file". Clerk's Papers, at 370. If the Committee decides that the inmate meets the definition of a sexually violent predator, it refers all of the information in its possession to the prosecutor in the county where the inmate was convicted. Thus, information originally regarded by the SOTP participants as confidential already may have been disclosed to the end-of-sentence review committee as well as Snohomish County. Both bodies thus may be influenced by information that would not have been disclosed under the Confidentiality Statement.

It is true that each inmate could seek suppression of this formerly confidential information during a civil commitment proceeding. It is possible, however, that such a proceeding might not be instituted absent release of this information. Moreover, we are persuaded by Plaintiffs' argument that injunctive relief is appropriate since we have concluded that the inmates have an equitable right to enforcement of the Confidentiality Statement. Further, we agree that this relief will produce a more consistent result. In addition, it does not appear that damages can fully remedy the harm caused by disclosure if disclosure results in a civil commitment proceeding. Given our conclusion that disclosure of the Plain-

tiffs' SOTP files is improper, we uphold the trial court's decision granting Plaintiffs injunctive relief.

### III

The next issue to be resolved is whether the trial court erred in certifying this case as a class action. Class actions are authorized in Washington by CR 23. *See Zimmer v. Seattle*, 19 Wn. App. 864, 867, 578 P.2d 548 (1978). The provisions of CR 23 that the plaintiffs rely upon are as follows:

> (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of section (a) are satisfied, and in addition:
>
> . . . .
>
> (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . .[.]

CR 23(a), (b)(2).

The DOC claims here that the elements of a class action have not been satisfied because the claims of the class members do not share common questions of law or fact, and because the claims of the named parties are not typical of those of the proposed class. The DOC argues that each SOTP file is different, that some SOTP participants do not have a claim against the DOC because their files were disclosable under the Confidentiality Statement, and that some have waived their right to object to disclosure of their SOTP files.

These arguments were rejected by the trial court and by the Court of Appeals. In his oral opinion, the trial judge stated that the argument about the diversity of information in the SOTP weighed against certification only if the issue before the court was viewed as covering all of the materials in a particular file.

[Defense counsel] argues that the court will be able to make only a generalized ruling and that in each case there would have to be subsequent litigation concerning individual defenses within a file, individual factors that might affect disclosure of material from a specific file, and accordingly there would be no real benefit to be served by having this class action precede those individual determinations. I think that argument makes sense if one looks at the issue as being what in the entire file will be disclosed, but I don't believe that is the issue. The issue is much narrower than that, and it is limited, as I noted, to what the participating inmate says or writes as part of the treatment.

Ex. 2, at 9. In its order denying review of the certification order, the Court of Appeals agreed with the trial court.

■ Complete unanimity of position and purpose is not required among members of a class in order for certification to be appropriate. In *Zimmer*, the Court of Appeals stated that the fact that some members of a class might not wish to benefit by the relief sought does not impair the legitimacy of a class action. *Zimmer*, at 870. This court has stated that a class action is not precluded by the possibility that individual issues may predominate once the general illegality of the questioned practice is determined. *Johnson v. Moore*, 80 Wn.2d 531, 535, 496 P.2d 334 (1972). Similarly, the Court of Appeals held that although different facts and different questions of law existed within a potential class, the fact that the defendant was engaged in a "common course of conduct" in relation to all potential class members made certification appropriate. *Brown v. Brown*, 6 Wn. App. 249, 255, 492 P.2d 581 (1971).

The DOC is attempting to make this case more complicated than it need be. What the Plaintiffs are attempting to enforce is the provision of the Confidentiality Statement barring disclosure of their statements and writings made during treatment that do not fall within stated exceptions to confidentiality. Thus, it appears that the claims of the class members do share common questions of law or fact, and that the claims of the named parties are typical of the claims of the proposed class. The DOC's attempt to disclose the full SOTP file without regard to the presence of statements or

writings clearly is a course of conduct common to all of the SOTP participants. We therefore uphold the trial court's certification order.

## IV

Finally, we consider whether the injunction is overly broad because it prohibits the internal disclosure of SOTP files among DOC officials. The part of the trial court's injunction that is at issue here provides as follows:

> 1. Defendants, their officers, agents, servants, employees, attorneys, and any person who in concert or participation with them who receives actual notice of this order are hereby enjoined from releasing any documents or other information from the Sex Offender Treatment Program ("SOTP") file of any member of the plaintiff class (any person who participated in the SOTP prior to October 17, 1990) to any persons other than SOTP treatment staff, as provided in the original Confidentiality Statement.

Clerk's Papers, at 543.

The DOC complains that limiting disclosure to the SOTP treatment staff is overly burdensome, since there are many circumstances in which other DOC officials might need to review an inmate's file. "Such circumstances include classification decisions, treatment decisions, defense of lawsuits, emergencies, and administrative or practical matters." Br. of Appellants, at 48. The DOC points to law providing that injunctions should be narrowly tailored to remedy the specific harms shown as support for its position that the injunction is overly broad. *See Kitsap Cy. v. Kev, Inc.*, 106 Wn.2d 135, 143, 720 P.2d 818 (1986); *Whatcom Cy. v. Kane*, 31 Wn. App. 250, 253, 640 P.2d 1075 (1981).

The only problem with the DOC's position is that its proposed narrowing would render the injunction virtually meaningless. The purpose of the lawsuit is to enforce the provisions of the Confidentiality Statement barring the disclosure of an inmate's statements and writings made during SOTP treatment to anyone other than SOTP treatment staff. Furthermore, the DOC is not persuasive in showing that a failure to disclose an inmate's statements and writings will impede its decisions regarding defense of lawsuits and administrative and practical matters.

Nor is the DOC persuasive in complaining that the injunction's reference to "SOTP treatment staff" is ambiguous. Given the DOC's argument that the injunction must be narrowed to allow all DOC officials to see the SOTP files, then "SOTP treatment staff" must not include DOC officials other than those participating in the SOTP program. We uphold the wording of the injunction as a proper attempt to enforce the language of the Confidentiality Statement.

Given our resolution of the above issues, we need not address the remaining arguments raised. We therefore affirm the trial court's order enjoining the DOC from violating the terms of the Confidentiality Statement with regard to those plaintiffs who signed the Statement and who did not sign the DOC's revised confidentiality policy.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.