# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| AUDREY B. WEBSTER, TRUSTEE OF THE AUDREY WEBSTER REVOCABLE LIVING TRUST, UTD 7/20/16 and MARY J. HODGE,<br><br>Appellants,<br><br>v.<br><br>MURPHY RESOURCES, INC., a Washington corporation; SEAN M. MURPHY AND JILL A. MURPHY, husband and wife; GREG MURPHY AND JOLYNNE MURPHY, husband and wife; and JOHN DOES 1 - 5,<br><br>Respondents. | No.  50843-5-II<br><br><br><br><br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Audrey B. Webster[1] and her sister Mary J. Hodge (collectively Webster) appeal two superior court orders that collectively dismissed all claims against all defendants in this case.  The first order granted summary judgment dismissal of Webster's waste claims against defendants Sean and Jill Murphy,[2] Greg and Jolynn Murphy, and Murphy

---

[1] It appears the Audrey B. Webster is a party to this action only in her capacity as the trustee of the Audrey Webster Revocable Living Trust, but the complaint does not make this clear.

[2]  Because Jill Murphy appears only in her capacity as Sean Murphy's wife, this author refers to Sean and Jill Murphy as Sean Murphy or Sean.

Resources Inc.[3] The second order granted summary judgment dismissal of all claims against defendant Sean. We affirm the trial court's order granting summary judgment dismissal of all claims against Sean because Webster failed to argue Sean's direct timber trespass and negligence liability below and because Sean is not vicariously liable for the actions of his independent contractors, Greg and Murphy Resources, Inc. After the trial court entered its first summary judgment order, Webster accepted Greg and Murphy Resources Inc.'s offer of judgment, so we do not address any claims against them.

FACTS

Webster owned a five-acre parcel of unimproved forested land and Sean owned an adjacent parcel of forested land. In 2012, Sean wanted to remove the trees on his property. Sean contacted Webster and asked if she wished to have him remove the trees on her property at the same time that he removed the trees from his property. Webster declined Sean's offer.

Sean did not know the exact boundary of the property and did not obtain a survey of the land or of the property line. Sean asked his brother Greg to remove the trees from his property. Greg owned Murphy Resources Inc., a company that assisted landowners in obtaining timber logging services.

Greg did not obtain a survey of Sean's property and did not have a deed describing the legal description of the property. But before beginning the logging project on Sean's property,

---

[3] Because Jolynn Murphy appears only in her capacity as a member of the marital community, this author refers to Greg and Jolynn Murphy collectively as Greg Murphy or Greg. Also, this author refers to Sean Murphy, Jill Murphy, Greg Murphy, Jolynn Murphy, and Murphy Resources Inc. collectively as "defendants" where necessary. Additionally, because many of the parties share the same last name, this author also refers to them individually by their first names when appropriate. No disrespect is intended.

Greg walked the length of the property and found a piece of rebar on the ground. Greg then used a compass and marked a line on what he considered to be the property line.

Murphy Resources Inc. then hired a logging company.[4] Greg instructed the loggers to follow the line he had established and to cut down the trees on what he believed was Sean's property. The loggers followed Greg's instructions and removed the trees. In addition to removing Sean's trees, the loggers removed 45 trees belonging to Webster.

In 2015, Webster discovered that a number of trees had been removed from the property. Webster then filed a lawsuit against the defendants, alleging that they

> individually or jointly, negligently, recklessly or intentionally failed to properly identify the boundaries of their property on which they conducted the timber harvest. Defendants and their agents or contractors, crossed over the property line and cut timber that belonged to Plaintiffs. Defendants' trespass was either intentional, reckless or negligent, and is actionable under RCW 4.24.630 and RCW 64.12.030.

Clerk's Papers (CP) at 2. Webster sought reasonable attorney fees, costs, and treble damages.

The parties then engaged in pretrial discovery. During a deposition, Sean stated that he authorized Greg to take "all steps necessary" to harvest the timber on his property. CP at 382. Sean stated that he relied on Greg to do the whole project and gave him complete authority to accomplish the project. Sean further stated that he relied on Greg to find the deed and the legal description of the property. Sean also stated that he did not discuss the boundary line or the need for a survey with Greg. Sean also acknowledged that the logging that occurred on Webster's property was a trespass.

Sean clarified that he never entered into a contract with Greg and did not know that Greg had hired the loggers to cut the trees. Sean affirmed that he did not participate in the logging and

---

[4] The company that removed the trees is not a party to this appeal.

that he did not know how to determine a boundary line. Sean also disclosed that he did not know how Greg located the boundary line and did not know the steps Greg took to inform the loggers of the boundary line. Sean further stated that he lived in Hawaii, was not present at the time of the logging, and did not know that the trespass had occurred until Webster filed the lawsuit.

Greg also provided deposition testimony and stated that Sean had given him "full authority" to act on his behalf to conduct the timber harvest. CP at 366. Greg also stated that he did not hire a surveyor or talk to Sean about the cost of a survey, and that he alone made the decision to forego hiring a surveyor. Greg stated that he took full responsibility for marking the boundary line in the manner that he did. CP at 405, p. 54. Greg affirmed that he told the loggers where to cut and that the loggers followed the line that he had marked. Greg acknowledged that the reason the trespass occurred was due to his incorrect marking of the boundary line.

The defendants collectively filed a motion for summary judgment, seeking dismissal of Webster's claims against them under RCW 64.12.030,[5] the waste statute. The defendants argued

---

[5] RCW 64.12.030 provides:

> Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree, including a Christmas tree as defined in RCW 76.48.020, timber, or shrub on the land of another person, or on the street or highway in front of any person's house, city or town lot, or cultivated grounds, or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, in an action by the person, city, or town against the person committing the trespasses or any of them, any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

Webster's claim must be dismissed because as a matter of law, when RCW 64.12.030, the timber trespass statute applies, the waste statute, RCW 4.24.630,[6] cannot apply.[7]

In response, Webster asserted that the waste statute applied because the logging activity damaged "landscape" which equated to damage to her land and real property. CP at 246. Despite the fact that there was no residence on the property, Webster argued that the defendants destroyed boundary trees that would have created a "visual screen" for a future resident and that these trees were a "valuable landscape amenity." CP at 246.

The trial court granted the defendants' motion and dismissed Webster's waste claims against all defendants. Webster filed a motion for reconsideration which the court denied. Soon thereafter, Greg and Murphy Resources Inc. extended an offer of judgment for $40,000 to

---

[6] RCW 4.24.630 provides:

> (1) Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. For purposes of this section, a person acts "wrongfully" if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act. Damages recoverable under this section include, but are not limited to, damages for the market value of the property removed or injured, and for injury to the land, including the costs of restoration. In addition, the person is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs.
> (2) This section does not apply in any case where liability for damages is provided under RCW 64.12.030, 79.01.756, 79.01.760, 79.40.070, or where there is immunity from liability under RCW 64.12.035.

[7] The defendants also filed a motion for summary judgment regarding the proper measure of damages. The defendants argued that the correct measure of damages was stumpage. The trial court denied the motion and the defendants did not appeal the trial court's order denying their motion.

Webster. Webster accepted the offer of judgment, leaving Sean and Jill as the remaining

defendants in the case.

Sean then filed a motion for summary judgment seeking to have all of Webster's

remaining claims against him dismissed. Sean argued that he had no involvement in the trespass

because the logging company that Murphy Resources Inc. hired committed the trespass at Greg's

direction. Sean argued that he did not employ the logging company, did not determine the scope

of work, did not direct or supervise the work, and did not make any demands on how the work

was to be performed. Sean also asserted that he was not present at the time of the tree removal.

In a supporting declaration, Sean stated:

> Aside from asking Murphy Resources, Inc., to manage the harvest, I had no direct involvement in the process. I did not instruct Murphy Resources, Inc., how to perform the job or when to perform the job. Indeed, I left all details of the timber harvest to Murphy Resources, Inc. I did not control Murphy Resources' (or its employees') work or otherwise offer any instruction or supervision about how they were to carry out their duties.

CP at 344.

Webster opposed the motion, arguing that Sean was liable for the authorized acts of "his

agents," Greg and Murphy Resources Inc. CP at 351. Webster asserted that Sean gave Greg

complete "authority to do all acts necessary to accomplish the objective of harvesting the timber

from Sean and Jill Murphy's parcel." CP at 352. Webster stated that

> "[i]n carrying out that authority, Greg Murphy recklessly marked an incorrect boundary line and directed the loggers to cut trees that were actually on Webster's land. Greg Murphy and Murphy Resources are directly liable for the trespass Greg Murphy directed. Sean and Jill Murphy are directly liable for the acts of their agent, Greg Murphy, who was acting within the authority they had given him."

CP at 352. Webster went on to argue that if Sean "had done the same thing directly, [he] would

have been liable" and reiterated that Sean and Jill were "directly liable for the timber trespass

6

caused by their agent, Greg Murphy." CP at 353. Finally, Webster sought a ruling for treble damages under the timber trespass statute.

In reply, Sean asserted that Webster could not create a vicarious liability claim by simply labeling Sean the "'principal'" and Greg the "'agent.'" CP at 413. Sean asserted that undisputed facts showed that he did not cut any of the trees and that Greg and Murphy Resources Inc. did not act as his agents but rather acted as independent contractors. Sean also moved to strike Webster's request for treble damages, arguing that Webster's request was a "disguised motion for affirmative relief" that Webster had failed to properly note. CP at 415.

At the summary judgment hearing, Sean argued that Webster failed to show an agency-principal relationship sufficient to create vicarious liability. Verbatim Report of Proceedings (VRP) (May 26, 2017) at 4. Sean also argued the facts showed that Greg was an independent contractor, and not an agent. Webster responded that Greg was not an independent contractor and that because Sean had given Greg his actual authority, Sean could not "avoid liability for what the person they empower and authorize to act for them might do." VRP (May 26, 2017) at 12. Notably, Webster did not argue that Sean was directly liable—as opposed to vicariously liable—for Webster's damages.

The court then granted Sean's motion for summary judgment dismissal. The court also instructed Webster to note her motion for treble damages, however Webster did not renote the motion.

Webster then filed a motion for reconsideration and argued that Sean was directly liable for his affirmative acts or omissions and claimed that "this is a case of **direct liability** through **actual authority**." CP at 430. The trial court denied Webster's motion. Webster now appeals the order granting partial summary judgment dismissal of claims under RCW 4.24.630 against all

7

defendants, and the court's order granting summary judgment dismissal of the timber trespass

vicarious liability claims against Sean.[8]

ANALYSIS

Webster asserts that genuine issues of material fact preclude summary judgment and that

the trial court erred by dismissing the waste claims and erred by dismissing all claims against

Sean.[9]  We disagree.

---

[8] Webster's notice of appeal also lists the trial court's order denying her motion for reconsideration on the issue of the defendant's liability under RCW 4.24.630, the waste statute.  However, Webster makes no argument regarding the court's denial of her motion for reconsideration and therefore we do not consider the issue.  *Holder v. City of Vancouver*, 136 Wn. App. 104, 107, 147 P.3d 641 (2006).

[9] To the extent that Webster argues about the applicability of the waste statute, Webster's claims are not properly before this court.  First, as noted below, Webster failed to argue Sean's direct liability in the trial court and did not raise a claim of negligence.  As such, Webster cannot argue Sean's direct liability under the waste statute.  Second, because Webster settled with Greg, there are no claims remaining against him on appeal.  For these reasons, we do not address Webster's waste claims on appeal.

Even if we were to address the merits of Webster's argument that the trial court improperly granted summary judgment on the waste claims, Webster's arguments fail.  This court recently addressed the issue of whether timber trespass statute or waste statute applied issue in *Porter v. Kirkendoll*, ___ Wn. App. ___, 421 P.3d 1036 (2018).  In *Porter*, the plaintiff's "sole allegation was the cutting and removal of Porter's trees and damage to Porter's bushes." *Porter*, 421 P.3d at 1045.  We reiterated that the waste statute does not apply in any case where damages are provided for under the timber trespass statute reasoning that the timber trespass statute provides the sole relief where there were no circumstances of "waste, vandalism, or comprehensive property damage." *Porter*, 421 P.3d at 1045.  We held that as a matter of law, once a party can recover under the timber trespass statute that party cannot collect under the waste statute, barring some showing of comprehensive property damage. *Porter*, 421 P.3d at 1045.

Similar to *Porter*, here, there is no evidence of any circumstances of waste, vandalism, or comprehensive property damage to Webster's property.  Although Webster alleged damage to her landscape by way of damage to a potential future visual screen, any such damage resulted from the same acts necessary for the timber trespass.  Accordingly, the waste statute cannot apply in this case.

I. SUMMARY JUDGMENT PRINCIPLES

We review summary judgment decisions de novo and perform the same inquiry as the superior court. *Lakey v. Puget Sound Energy, Inc*., 176 Wn.2d 909, 922, 296 P.3d 860 (2013). The evidence, and all reasonable inferences therefrom, are viewed in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). A material fact is one upon which the outcome of the litigation depends. *In re Estate of Black*, 153 Wn.2d 152, 160, 102 P.3d 796 (2004).

A defendant is entitled to summary judgment if (1) the defendant shows the absence of evidence to support the plaintiff's case and (2) the plaintiff fails to come forward with evidence creating a genuine issue of material fact on an element essential to the plaintiff's case. *Clark Cty. Fire Dist. No. 5 v. Bullivant Houser Bailey P.C*., 180 Wn. App. 689, 699, 324 P.3d 743 (2014). If a defendant satisfies the initial burden of establishing the absence of a material fact, the inquiry then shifts to the plaintiff. *Burton v. Twin Commander Aircraft LLC*, 171 Wn.2d 204, 222-23, 254 P.3d 778 (2011). If the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, then summary judgment is proper. *Burton*, 171 Wn.2d at 223.

Mere allegations, argumentative assertions, conclusive statements, or speculation do not raise issues of material fact sufficient to preclude a grant of summary judgment. *Spradlin Rock Products, Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor Cty*., 164 Wn. App. 641, 654, 266 P.3d 229 (2011). Where reasonable minds could reach but one conclusion from the admissible facts, summary judgment should be granted. *Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn.

App. 5, 12 n.2, 98 P.3d 491 (2004). We may affirm summary judgment on any ground supported by the record. *Riley v. Iron Gate Self Storage*, 198 Wn. App. 692, 700, 395 P.3d 1059 (2017).

## II. CLAIMS AGAINST SEAN

Webster argues that the trial court erred by granting summary judgment dismissal of all claims against Sean. Webster asserts that at the time the trial court dismissed Sean, the case contained "both direct and vicarious liability" claims, and the trial court erred in dismissing those claims against Sean. Br. of Appellant at 11. Sean argues that Webster did not argue the issue of direct liability below and therefore cannot now argue that he is directly liable. Sean also argues that this court should reject Webster's arguments because there are no remaining appealable claims.[10]

We hold that Webster did not mention direct liability in the trial court and did not raise a claim of negligence, and therefore cannot argue either Sean's direct timber trespass liability or his liability for direct negligence on appeal. We further hold that the trial court properly granted summary judgment dismissal of the vicarious liability claims against Sean.

A.    *Sean's Direct Liability Not Called to the Attention of the Trial Court*

As a threshold matter, Sean argues that Webster failed to raise the issue of his direct liability in the trial court and is now therefore precluded from arguing any direct liability on appeal. Webster replies in a summary fashion that, "[r]espondents incorrectly argue that

---

[10] Sean's argument that there are "no appealable claims," is a conflated argument that contends that because (a) Webster settled with Greg and (b) all claims against Sean derive from a theory of agency, Webster has settled all claims in full. This argument is dependent on Webster's theories of Sean's independent and vicarious liability and are addressed below as such.

Appellants never put any evidence of Sean Murphy's own breaches of duty before the trial court, for which Sean Murphy would have direct liability. Citations to the record belie this argument. Sean Murphy's own breaches were always before the trial court."[11] Reply br. of Appellant at 1. We agree with Sean.

Under RAP 9.12, when reviewing a trial court's decision on a motion for summary judgment, we consider only evidence and issues called to the attention of the trial court. The purpose of this limitation is to effectuate the rule that the appellate court engages in the same inquiry as the trial court. *Vernon v. Aacres Allvest, LLC*, 183 Wn. App. 422, 436, 333 P.3d 534 (2014).

1. *Direct Timber Trespass Liability Not Argued Below*

In her pleadings and arguments on summary judgment and reconsideration, Webster argued only that Sean was liable for timber trespass and through the authorized acts of Greg, who Webster referred to as Sean's "agent." CP at 351. Webster argued that a principal is subject to liability to a third party harmed by an agent's conduct, and that Sean was Greg's principal. Webster asserted that Sean was directly liable by claiming that "this is a case of **direct liability** through **actual authority**." CP at 430. Although this statement contains the phrase "direct liability," it is simply a reiteration of an agency theory.[12]

---

[11] Webster provides no citations to the record in support of these statements and makes no further argument on this issue.

[12] "An agent's authority to bind his principal may be of two types: actual or apparent. Actual authority may be express or implied. Implied authority is actual authority, circumstantially proved, which the principal is deemed to have actually intended the agent to possess." *King v. Riveland*, 125 Wn.2d 500, 507, 886 P.2d 160, 165 (1994). "With actual authority, the principal's objective manifestations are made to the agent; with apparent authority, they are made to a third person." *King*, 125 Wn.2d at 507.

Webster never argued that Sean was directly liable for the trespass. Webster asserted below that the case was the "clearest case of [a] principal-agent relationship" and the closest Webster comes to arguing any direct trespass by Sean is to say that, "[t]his has never been a respondeat superior case. Greg Murphy is not an employee of Sean and Jill Murphy; they have no contract, and Greg Murphy was not subject to control of his physical actions. There is no need to engage in a right-to-physical-control analysis. Rather, this is a case of direct liability through actual authority." CP at 430 (emphasis omitted). However, this assertion is an assertion grounded in agency liability and not based on any direct act by Sean himself.

Because Webster failed to call Sean's direct liability to the superior court, we do not consider it on appeal. *See Vernon*, 183 Wn. App. at 436.

Even if we were to consider Webster's claim that Sean is directly liable for the trespass, her argument would fail. Webster cites to *Hill v. Cox*, 110 Wn. App. 394, 404, 41 P.3d 495 (2002) to support her assertion that Sean is directly liable. However the facts in *Hill* are distinguishable. In *Hill*, the court held that the landowner was directly liable for timber trespass when he engaged loggers to do the cutting, and where the loggers cut the trees with "acknowledged direction" from the landowner. *Hill*, 110 Wn. App. at 404.

Here, unlike *Hill*, Sean was not present or involved in any aspect of the tree removal process. The record is void of any evidence that Sean directed the trespass or participated in it. Sean was not on the property or even in the same state at the time of the trespass. Moreover, Sean did not personally participate in the trespass or the cutting of the trees and did not know about Greg's boundary marking or directions to the loggers. Further, Sean did not provide the loggers with any sort of "acknowledged direction" to trespass onto Webster's property. *Hill*, 110 Wn. App. at 404.

12

2. *Negligence Not Argued Below*

On appeal, Webster asserts that Sean is liable for "his own errors and omissions which contributed to the trespass." Br. of App. at 14. Although Webster does not mention "negligence" on appeal, Sean correctly points out that negligence would be the only alternative theory that could conceivably support Sean's direct liability. Br. of Resp't at 7. However, as with the issue of Sean's liability for direct timber trespass, Webster never called Sean's direct negligence to the court's attention.

To show actionable negligence, "'a plaintiff must establish: (1) the existence of a duty owed to the complaining party; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed breach was the proximate cause of the injury.'" *Jackson v. City of Seattle*, 158 Wn. App. 647, 651, 244 P.3d 425 (2010) (quoting *Burg v Shannon & Wilson, Inc.*, 110 Wn. App. 798, 804, 43 P.3d 526 (2002)).

In the motions below, Webster never brought a negligence theory to the trial court's attention. Webster never explained what duty Sean may have had, and never discussed how Sean may have breached a duty of care. The record is clear that Webster only asserted arguments to the court based on agency liability and not on a negligence theory. Also, indicative of the trial court's understanding of the issues presented to it, the trial court only ruled on whether Sean was vicariously liable for Greg's acts. The trial court never commented on any direct negligence or direct liability claim, but rather solely addressed vicarious liability because those were Webster's only asserted claims.

In summary, Webster did not call to the trial court's attention any distinct or separate direct trespass or negligence claims against Sean. The only claims Webster asserted were related to Sean's liability for Greg's actions. Because Webster failed to call to the trial court's attention

a claim that Sean was directly liable, we hold that Webster cannot argue on appeal that Sean is liable for his own acts.[13]

B.      *Vicarious Liability*

Webster argues that the trial court erred in dismissing the vicarious liability claims against Sean. But even if the trial court erred in entering summary judgment in Sean's favor on the issue of vicarious liability, and a principal-agent relationship rather than employer-independent contractor relationship existed between Sean, Greg, and Murphy Resources Inc, Webster's settlement with Greg released Sean of any vicarious liability.

Generally, a principal is released by operation of law as a result of a release of the agent, if that agent is solvent. *Vanderpool v. Grange Ins. Ass'n*, 110 Wn.2d 483, 487, 756 P.2d 111 (1988). Interestingly, Webster states that because she accepted an offer of judgment from Greg and Murphy Resources Inc., that "arguably all vicarious liability of Sean Murphy was extinguished upon Plaintiff's acceptance of that offer." Br. of Appellant at 16.

Webster's statement is correct. Because Webster accepted an offer of judgment from Greg and Murphy Resources Inc., the claims against Greg and Murphy Resources Inc. were released. If Sean was the principal of Greg and Murphy Resources Inc., then as an operation of law, any liability against Sean for the acts of his agents was released with Webster's acceptance of the offer of judgment from Greg.

---

[13] In her reply brief, Webster asserts that throughout the briefing at the trial court, she asserted that Sean was liable for his own acts and omissions, such as not knowing where the boundary line was, not discussing the boundary lines with Greg, not giving Greg a copy of the deed, and failing to exercise his authority and require his agent to exercise ordinary care in locating the boundary line. However, although the record below mentions these facts, the record contains no argument by Webster attempting to show that Sean was *directly liable* for any of those actions or omissions.

Because Webster accepted an offer of judgment from Greg, Sean would be released from any vicarious liability for the trespass, even if an agent-principal relationship existed between Sean, Greg, and Murphy Resources Inc. Accordingly, we affirm summary judgment dismissal of all claims against Sean Murphy.

## III. DAMAGES

Webster argues that she is entitled to treble damages under RCW 64.12.030. We hold that the trial court did not err by dismissing Webster's timber trespass claims against Sean on summary judgment, and we therefore do not reach the issue of treble damages.

## ATTORNEY FEES

Webster requests an award of attorney fees and costs on appeal pursuant to RAP 18.1 and RCW 4.24.630, the waste statute. However, because Webster is not the prevailing party, we deny her request.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Johanson, J.

_____
Melnick, J.